627 So.2d 788 (1993)
STATE of Louisiana, Appellee,
v.
James Harmon HARRIS aka Herman Harris, Appellant.
No. 25,539-KA.
Court of Appeal of Louisiana, Second Circuit.
December 1, 1993.
*790 Indigent Defender Office by Alan Harris, Shreveport, for appellant.
Richard P. Ieyoub, Atty. Gen., Paul J. Carmouche, Dist. Atty. by Rebecca I. Bush, H. Ted Cox, Catherine M. Estopinal, Asst. Dist. Attys., Shreveport, for appellee.
Before LINDSAY, HIGHTOWER and STEWART, JJ.
STEWART, Judge.
Defendant, James Harman Harris, a/k/a Herman Harris, was arrested and charged with three counts of aggravated rape. At the time the rapes occurred, Harris was age 30, and the victim was age 9. Harris waived his right to a jury trial and was tried before a judge. The trial court convicted him of three counts of aggravated rape, LSA-R.S. 14:42, and sentenced him to three concurrent life sentences without benefit of probation, parole, or suspension of sentence. Harris appeals his conviction, asserting ten assignments of error which he numbered 3 through 12. Because these assignments have no merit, his conviction is affirmed.

FACTS
In December of 1991, "Herman" Harris, a friend of the victim's family, began residing in the victim's home. Shortly thereafter, the 9-year-old victim began experiencing vaginal itching and burning upon urination and was brought to the LSU Medical Center on January 15, 1992 at which time she was examined by Dr. David Tatori. On January 23, 1991, the victim returned to the LSU Medical Center making the same complaints. On that occasion, she was examined by Dr. Steiner who treated her with some type of a sulphur-based drug. Once again, on February 10, 1992, making the same complaints, the victim returned to the LSU Medical Center at which time Ms. Cheryl Fernandez, a pediatric nurse practitioner, performed an examination and concluded that the 9-year-old child had been sexually abused. Nurse Fernandez immediately informed Dr. Turnage who then performed a second examination and reached the same conclusion as Nurse Fernandez.
Nurse Fernandez then alerted Jean Moffett of the Caddo Parish Child Protection Agency and Detective Smith of the Shreveport Police Department who then began an investigation for possible child abuse. Several days later, after being informed by the LSU Medical Center that the 9-year-old victim had tested positive for gonorrhea and chlamydia, Ms. Moffett traveled to the victim's home to request that all male members of the household be tested for venereal diseases and that they give their consent to the release of their medical records. Also, when Nurse Fernandez learned that the victim tested positive for venereal diseases, she questioned the victim further. After it was explained to her how venereal diseases are contracted, the victim admitted having sex with Harris.
A few days later on February 20, 1993, after reviewing Harris' medical records, Ms. Moffett discovered that on January 28, 1992, Harris tested positive and was treated for both gonorrhea and chlamydia. Ms. Moffett then related this information to Detective *791 Smith. On February 24, 1992, Detective Smith phoned Harris and requested that they meet at his office in the youth bureau. After being informed of his Miranda rights, but before being placed under arrest, Harris gave a statement whereby he admitted having vaginal sexual intercourse with the victim on at least three different occasions.
Thereafter, Harris was arrested by the Shreveport Police Department, indicted by a Caddo Parish grand jury, tried before a judge alone, convicted, and sentenced for three counts of aggravated rape. Defendant appeals his conviction, asserting several assignments of error. Finding no merit to the assignments, we affirm.

DISCUSSION

Motion to Suppress Medical Release Forms
Harris filed a motion to suppress in which he sought to declare as inadmissible two medical release forms executed by him and all medical information obtained as a result of their execution. The basis of the motion was that because Jean Moffett, an official of the Caddo Parish Child Protection Office, did not advise him of his Miranda warnings before he executed the medical release forms, the forms were illegally obtained. After an evidentiary hearing, the trial court denied the motion. Harris challenges as error the trial court's denial of this motion. This assignment has no merit for several reasons.
First, Miranda warnings are required as a prerequisite to the admissibility of a statement taken from a suspect under custodial interrogation. State v. Ealy, 530 So.2d 1309, 1314 (La.App.2d Cir.1988), writ denied, 536 So.2d 1234 (La.1989) (emphasis ours). See also, State v. Pelt, 448 So.2d 1294 (La.1984), cert. denied, 469 U.S. 825, 105 S.Ct. 104, 83 L.Ed.2d 48 (1984). Harris concedes that he was not in custody.
Second, Miranda warnings are not required to validate a consent search. U.S. v. D'Allerman, 712 F.2d 100 (5th Cir.1983), writ denied, 464 U.S. 899, 104 S.Ct. 254, 78 L.Ed.2d 240 (1983); State v. Williams, 353 So.2d 1299 (La.1977), cert. denied, 437 U.S. 907, 98 S.Ct. 3098, 57 L.Ed.2d 1138 (1978). When Harris executed the forms, he did nothing more than consent to a search of his medical information. His consent was neither "testimonial" nor "communicative" and, therefore, was not a statement against which Miranda was intended to protect. See Ealy, supra, at 1315.
Harris argues in brief that, because Ms. Moffett turned over all evidence that she obtained in her investigation, including these test results and that "[t]o claim that Ms. Moffett was not a law enforcement officer is, for all practical purposes, not really true." Harris executed two medical consent forms at the request of Ms. Moffett, a case worker for the child protection agency. We note that Ms. Moffett was not a police officer, and did not become one by sending her investigative file to the district attorney for prosecution. However, we do not address this argument because we have already determined that the execution of each release form involved no custodial interrogation and no testimonial or communicative statement.
Harris' primary complaint on appeal is that "he should have been informed, in some form or fashion, that he was the subject of a sexual abuse case and that what he was doing could be used against him." The record reveals that, before Harris executed the forms, Ms. Moffett explained that in order for her to obtain his medical information, he would need to give his consent by signing the forms. Thus, he was informed that by executing the forms, he was consenting to the release of his medical information. The record contains no indication or allegation that Harris involuntarily consented to the search of his medical records. He argues on appeal that it was an uninformed consent, but not that it was an involuntary consent. Moreover, the state presented unrebutted evidence at the hearing that Harris was neither coerced nor threatened into signing either of the two medical release forms. Thus, the state met its burden of showing that Harris' consent to the search of his medical records was freely and voluntarily given, and therefore, valid.
*792 Because there was no requirement that Miranda apply in this situation, this assignment has no merit.

Motion to Suppress Harris' Statement
Harris argues that a statement he gave to Detective Smith at the youth bureau should be suppressed because under the totality of the circumstances, the statement was not freely and voluntarily given. He claims that the statement and his arrest were "tainted" by Ms. Moffett's improper methods of obtaining the medical release forms which produced the evidence that led to his arrest.
On February 24, 1993, Detective Smith called Harris on the phone and asked him to come into his office so that they could straighten out the matter. Harris acquiesced and went to Detective Smith's office at the youth bureau on his own.
The admissibility of a confession is in the first instance a question for the trial court. Its conclusions on the credibility and weight of testimony relating to the voluntariness of a confession will not be overturned on appeal unless they are clearly contrary to the evidence. See State v. Hicks, 607 So.2d 937, 942 (La.App.2d Cir.1992).
At the hearing on the motion to suppress, the evidence shows that defendant signed a Miranda warning form customarily used at the youth bureau and was advised of his Miranda rights. The record reveals that Harris made a free and voluntary confession. As discussed above, Ms. Moffett properly obtained Harris' signature on the medical release forms. After hearing the witness and all the evidence regarding this motion, the district court concluded that Harris freely and voluntarily gave the statement after he was fully advised of his Miranda rights. We find no abuse of the trial court's discretion regarding this assignment.
This assignment of error lacks merit.

Motion for Bill of Particulars
The grand jury indictment charged Harris with three counts of aggravated rape which occurred between January 1, 1992 and February 24, 1992. In his "Motion for Bill of Particulars," Harris requested that the state specify, as to each count of the indictment, the date, time of day, and place at which each count was alleged to have occurred. The state responded that it was not required to furnish the date, time of day, and place at which each count was alleged to have occurred. Based on the fact that the state was unable to make the bill of particulars more specific, the district court denied Harris' motion for the requested information.
Harris argues that, because LSA-Const. Art. I, § 13 provides that the accused shall be adequately informed of the nature and cause of the accusation against him, and due to the nature and complexity of this case, he was entitled to more specific information about when the offenses occurred.
The function of a bill of particulars is to inform the accused of matters, pertinent to the charge, which the trial court in its sound discretion considers necessary, in fairness, to permit the accused to defend himself. See State v. Volentine, 565 So.2d 511, 513 (La.App. 2d Cir.1990). The trial court is vested with wide discretion on determining the sufficiency of the State's answer to bills of particular, and its ruling will not be disturbed unless a clear abuse of that discretion is shown. State v. Ross, 561 So.2d 1004, 1007 (La.App. 4th Cir.1990), writ denied in part, writ not considered in part, 594 So.2d 885 (La.1992); Volentine, supra.
LSA-C.Cr.P. art. 468 governs when the indictment must contain the exact dates and times of the offenses. It provides:
Art. 468. Date and time
The date or time of the commission of the offense need not be alleged in the indictment, unless the date or time is essential to the offense.
If the date or time is not essential to the offense, an indictment shall not be held insufficient if it does not state the proper date or time, or if it states the offense to have been committed on a day subsequent to the finding of the indictment, or on an impossible day.
All allegations of the indictment and bill of particulars shall be considered as referring to the same date or time, unless otherwise stated.
*793 In the instant case, the victim could not name specific dates and times when Harris raped her. However, she could, and did, give time frames within which the rapes occurred. These time frames fell within the time frame set forth in the indictment. We find that the time frame stated in the indictment was specific enough to allow Harris to adequately prepare his defense. Consequently, Harris was not surprised by the testimony at trial. See and compare, Ross, supra, 561 So.2d at 1007-1008. The district court did not abuse its discretion. We find no error in denying this motion regarding the exact dates when the crimes allegedly occurred.
Harris also contends that the district court erred in not requiring the state to specify the location of the alleged rapes. LSA-C.Cr.P. art. 469 governs this issue. It provides:
Art. 469. Venue and place
It is not necessary to state any venue in the body of the indictment, but the state, parish, or other jurisdiction where the indictment is filed shall be taken to be the venue for the offense charged in the indictment.
The place of the commission of the offense need not be alleged in the indictment unless the place of commission is essential to the offense. All allegations in the indictment and bill of particulars shall be considered as referring to the same place, unless stated otherwise.
The place where the rape occurred is not an essential element to the crime of aggravated rape. LSA-R.S. 14:42. See and compare, State v. Hamilton, 307 So.2d 329 (La.1975); State v. Ross, supra. Therefore, the district court did not err in denying this motion with regard to the alleged location of the rapes.

Motion to Sever
Harris contends that the state improperly joined three counts of aggravated rape into one indictment. He claims that the joinder of these three offenses into one indictment was improper because it confused the jury, made the jury hostile towards him, and thus, prejudiced him. Thus, he claims it was error for the district court to refuse to quash the indictment or to sever the offenses.
As this court stated in State v. Baker, 535 So.2d 861, 863 (La.App. 2d Cir.1988),
[w]hen an accused has been charged in the same indictment with two or more offenses pursuant to Art. 493, he may apply for severance of offenses under LSA-C.Cr.P. Art. 495.1, which provides:
If it appears that a defendant or the state is prejudiced by a joinder of offenses in an indictment or bill of information or by such joinder for trial together, the court may order separate trials, grant a severance of offenses, or provide whatever other relief justice requires.
This motion is addressed to the sound discretion of the trial court and the court's ruling should not be disturbed on appeal absent a showing of an abuse of discretion. (Citations omitted.)
Two or more offenses may be joined in the same indictment in a separate count for each offense if the offenses charged are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan, provided that the offenses joined must be triable by the same mode of trial. LSA-C.Cr.P. Art. 493; State v. Baker, supra.
Separate counts of aggravated rape are of the same or similar character. The punishment for each offense is necessarily confinement at hard labor, therefore the mode of trial (jury composed of twelve jurors, ten of whom must concur to render a verdict) is the same. LSA-R.S. 14:42(C); LSA-C.Cr.P. Art. 782. State v. Celestine, 452 So.2d 676 (La.1984); State v. Baker, supra. Therefore, the offenses were properly joined. Moreover, any possible prejudice to the defendant was mitigated by the fact that he was not tried before a jury. The evidence regarding the various counts was relatively simple and distinct. The record reveals that the trial court had no difficulty following the evidence. The record reveals no prejudice to Harris by the joinder of the *794 offenses and the trial court did not abuse its discretion in denying the motion to sever.

Responsive Verdicts
During trial, the state filed a motion which requested an instruction that excluded forcible rape, attempted forcible rape, simple rape, and attempted simple rape as possible responsive verdicts. After all evidence had been submitted, the court granted the state's "Motion for Requested Instruction". Harris asserts that the trial court erred in failing to consider the following responsive verdicts: forcible rape, attempted forcible rape, sexual battery, simple rape and attempted simple rape.
LSA-C.Cr.P. Art. 814(C) provides that
[u]pon motion of the state ..., the court shall exclude a responsive verdict listed in [LSA-C.Cr.P. Art. 814(A)] if, after all the evidence has been submitted, the evidence, viewed in a light most favorable to the state, is not sufficient reasonably to permit a finding of guilty of the responsive offense.
Thus, if there is no evidence reasonably supporting a verdict, then such a verdict may be excluded as a possible responsive verdict. State v. Trosclair, 584 So.2d 270, 281 (La. App. 1st Cir.1991), writ denied, 585 So.2d 575 (La.1991); LSA-C.Cr.P. Art. 814(C).
Moreover, a judge in a bench trial is not required ... to charge himself on the applicable law, since he is presumed to know it, unless one of the parties timely requests that he do so and provides him with the requested written charges. See LSA-C.Cr.P. Art. 781.
State v. Aldridge, 450 So.2d 1057, 1059 (La. App. 1st Cir.1984).
In this case, Harris was tried by judge alone. Near the end of the trial, the state timely filed a motion requesting that the judge instruct himself and provided the judge with the requested instruction. The instant charges are based on LSA-R.S. 14:42(A)(4): committing an act of vaginal sexual intercourse with a victim who is under the age of 12 years. This form of aggravated rape is presumed to be committed without the lawful consent of the victim. At the close of the trial, the evidence revealed that the victim was less than 12 years of age and that Harris was more than 18 years of age when the rape occurred. Harris did not introduce any evidence tending to prove their ages to the contrary.
Neither Harris nor the state introduced any evidence showing that either force, threats or violence was used upon the victim. Thus, the evidence does not support a verdict of forcible rape. Likewise, there is no evidence which shows that the victim was mentally impaired, intoxicated or of unsound mind, or that she submitted under the belief that Harris was her husband. Thus, the evidence does not support a verdict of simple rape. Therefore, the trial court did not err in granting the state's "Motion for Requested Instruction."
On this record, the judge was not required to charge himself as to the law applicable to forcible rape, simple rape, or the responsive verdicts thereto.
This assignment of error lacks merit.

Expert Witness Testimony: Qualification as an expert
At trial, the state tendered Nurse Practitioner Cheryl Fernandez as an expert pediatric nurse practitioner. At that time, Harris objected to the tender on the basis that the state failed to specify Ms. Fernandez' field of expertise. Counsel for defendant stated that, if the state was claiming that Ms. Fernandez was an expert in pediatric medicine, he objected to that qualification. There was no objection made as to either the weight accorded to, or prejudicial effect of, Fernandez' testimony.
On appeal, Harris contends that the trial court erred in allowing Ms. Fernandez, a pediatric nurse practitioner, to testify as an expert. He argues that her status as an expert gave her testimony greater weight than it deserved which caused the prejudicial effect of her testimony to outweigh its probative value. At trial, however, this was not the basis of Harris' objection.
A new basis for an objection cannot be raised for the first time on appeal. State v. Cressy, 440 So.2d 141 (La.1983); State v. *795 O'Neal, 501 So.2d 920, 924 (La.App. 2d Cir. 1987), writ denied, 505 So.2d 1139 (La.1987); LSA-C.Cr.P. Art. 841. Thus, Harris' claim that the prejudicial effect of Ms. Fernandez's testimony outweighed its probative value is not properly before this court.
Harris also appeals the trial court's acceptance of Nurse Fernandez as an expert pediatric nurse practitioner on the basis argued at trial. He contends that the trial court erred in allowing Ms. Fernandez to testify as an expert in the field of pediatrics because her field of expertise was not clearly established and because she was not a qualified pediatrician.
It is a well settled rule that a trial judge is vested with wide discretion in determining the competence of an expert witness. State v. Boyer, 406 So.2d 143 (1981). Competence of an expert witness is a question of fact to be determined within the sound discretion of the trial judge; his rulings on the qualification of expert witnesses will not be disturbed in the absence of manifest error. State v. Drew, 360 So.2d 500 (La.1978).
State v. Stucke, 419 So.2d 939, 944 (La.1982). See also, Comment (d), LSA-C.E. Art. 702; State v. Hill, 601 So.2d 684, 692 (La.App. 2d Cir.1992), writ denied, 608 So.2d 192 (La. 1992).
The following exchange occurred at trial as the state tendered Fernandez as an expert witness:
MS. BUSH: [Attorney for the state] Your Honor, at this time we are going to tender Ms. Fernandez as an expert pediatric nurse practitioner.
MR. HARRIS: [Attorney for Harris] Your Honor, I would ask the prosecution to state what field is her expertise.
MS. BUSH: Your Honor, I believe I saidif I didn't, I apologize; a pediatric nurse practitioner.
MR. HARRIS: All that says is what her title is.
MS. BUSH: Your Honor, that is a specialty. She is a medical specialist. She is a nurse, she is also a nurse practitioner who is certified to do so. She is also certified as a pediatric nurse practitioner; that is her title and that is what her job encompasses. It would be similar to having a pediatrician or a doctor who specializes in pediatric medicine.
MR. HARRIS: Well, that would be the field of medicine, pediatric medicine. Are we sayingis the District Attorney saying this witness is an expert in pediatric medicine; if so, I object to the qualification.
THE COURT: I don't take it that that's what she's saying. And of course, if she goes beyond what you think is appropriate for her expertise, you can object at that time. But I'll accept her for the limited purpose for which she's is [sic] being tendered.
Fernandez is employed by LSU Medical Center in the pediatric clinic as a registered nurse and a certified pediatric nurse practitioner. She performs assessments and physical examinations, and also renders treatments based on her assessments and department protocols. Protocols are rules and regulations promulgated by the pediatric clinic which allow her to treat patients for various illnesses without consulting a doctor.
The record reveals that Nurse Fernandez obtained her associate degree in nursing from Phoenix College in 1966. In 1974 she began a one-year pediatric nurse practitioner program which consisted of a four-month in class didactic and an eight-month on-the-job internship. After she completed her internship, excepting the year of 1976, she worked for a family practitioner until 1988 when she began working for LSU Medical Center. Since 1988, she has continuously worked at LSU Medical Center as a nurse practitioner. In 1990, she successfully completed an examination and obtained her certification as a pediatric nurse practitioner. She also attended a special eight-hour workshop on sexual child abuse at the National Association of Pediatric Nurse Practitioners & Associates Convention in San Francisco in 1990.
The record contains a detailed description of her training as a pediatric nurse practitioner, including her training with four pediatricians and her certification in this field. Defense counsel fails to show that Fernandez' *796 testimony either exceeded her status as a nurse practitioner or encroached upon the expertise which only a pediatric physician would possess. Moreover, Nurse Fernandez' testimony was corroborated by the testimony of Dr. Patricia Turnage, the state's expert in pediatric medicine. Given Nurse Fernandez' qualifications and the limited extent of her testimony, we find no abuse of discretion in the trial court's decision to sustain the state's tender of her as an expert pediatric nurse practitioner.

Expert Witness Testimony: Hearsay
Harris also asserts that the trial court erred in allowing Ms. Fernandez to testify from hearsay statements allegedly made to her by other physicians or medical personnel who were alleged to have seen or examined the complainant.
Harris asserts in brief that the trial court overruled this objection. However, the record discloses that the trial court did not make a definitive ruling on this objection which was made during the state's redirect examination of Nurse Fernandez.
In a non-responsive answer to the state's question on redirect examination, Fernandez said that "Dr. Turnage did collaborate with me that she definitely had findings of abuse". The defense counsel objected to that statement as being hearsay. After argument by counsel, the trial court said "Go ahead and proceed." Defense counsel asked the court to note his objection, and the state proceeded to question Fernandez on other matters. The practical effect of the trial court ruling was that there was no further testimony by Fernandez about Dr. Turnage's findings.
Dr. Turnage subsequently testified on direct examination, and specifically stated that it was her conclusion that the victim had been sexually abused. Harris had full opportunity to cross-examine Dr. Turnage about her examination of the victim and any results or conclusions therefrom.
The statement to which defense counsel objected appears to be unsolicited, non-responsive hearsay. This court has noted that, in order for an appellate court to affirm a defendant's conviction when hearsay evidence has been improperly admitted at trial, the court must determine, beyond a reasonable doubt, that the improperly admitted evidence did not contribute to the verdict. See State v. Edwards, 569 So.2d 597, 600 (La.App.2d Cir.1990), writ denied, 576 So.2d 29 (La.1991) and cases cited therein. However, inadmissible hearsay which is merely cumulative or corroborative of other testimony adduced at trial is considered harmless. State v. Moseley, 587 So.2d 46, 56 (La.App.2d Cir.1991), writ denied, 589 So.2d 1066 (La.1991) (citations omitted). See also, State v. Banks, 439 So.2d 407. (La.1983).
Even assuming that Ms. Fernandez' statement was in fact hearsay, and that it was improperly admitted into evidence, there was no jury to be admonished to disregard the hearsay. There was also no further testimony by the witness about the statement to which defense counsel objected. Dr. Turnage testified and was fully examined by defense counsel. On this record, we find that any error is rendered harmless by (1) the cumulative and/or corroborative testimony of Dr. Turnage, (2) the absence of a jury, and (3) the fact that there was no further testimony by Fernandez about Dr. Turnage's findings. Thus, even assuming that Ms. Fernandez' statement was hearsay and was improperly admitted into evidence, we find no reversible error.
This assignment of error is meritless.

Absence of Medical Reports and Scientific Examination Results
The state called Dr. Patricia Turnage to testify. Defense counsel objected, asserting that there was no information given by the state during discovery which indicated that Dr. Turnage had examined the victim and that he had not been informed of the results of Dr. Turnage's physical examination. On appeal, Harris contends that the trial court erred (1) in allowing Dr. Patricia Turnage to testify in this matter without having, pursuant to the defense Motion for Discovery, provided to the defendant all medical reports or records prepared in the matter including the report of Dr. Turnage, and (2) in failing to grant defendant's Motion objecting to the testimony of Dr. Turnage when the state had not provided to the defendant all results of *797 any scientific examination undertaken in this matter by Dr. Turnage pursuant to Article 719 of the Louisiana Code of Criminal Procedure.
In his discovery motion, Harris requested that the district attorney inform him of all physical examinations. LSA-C.Cr.P. Art. 719 provides as follows:
Art. 719. Reports of examinations and tests
Upon motion of the defendant, the court shall order the district attorney to permit or authorize the defendant to inspect and copy, photograph, or otherwise reproduce any results or reports, or copies thereof of physical or mental examination, and of scientific tests or experiments, made in connection with or material to the particular case, that are in the possession, custody, control, or knowledge of the district attorney and intended for use at trial....
In response to the Harris' discovery motion, the state provided a copy of Nurse Fernandez' report.
The discovery rules, LSA-C.Cr.P. Art. 716 et seq., are intended to eliminate any unwarranted prejudice which could arise from surprise testimony. See State v. Toomer, 395 So.2d 1320 (La.1981); State v. White, 430 So.2d 171 (La.App. 2d Cir.1983), writ denied, 433 So.2d 1055 (La. 1983). Not every failure by the state to comply with these rules automatically requires a reversal. However, when such a failure results in prejudice to the defendant, it does constitute reversible error. Thus, in the event the state failed to comply with the discovery rules, it must be determined whether the defendant was actually prejudiced by the nondisclosure and whether the trial court abused its discretion. State v. Powell, 598 So.2d 454 (La.App.2d Cir.1992), writ denied, 605 So.2d 1089 (La.1992); State v. Freeman, 447 So.2d 1145, 1157 (La.App. 3d Cir.), writ denied, 449 So.2d 1356 (La. 1984); State v. Vaccaro, 411 So.2d 415, 427 (La.1982). Additionally, the effects of a discovery violation may be remedied by effective cross examination. State v. Powell, supra.
The record reveals that the victim was initially examined by Nurse Fernandez, a pediatric nurse practitioner. After making her initial physical exam, Nurse Fernandez asked Dr. Turnage to verify her findings. Dr. Turnage then examined the victim, read over Nurse Fernandez's written report, and agreed with the conclusions therein. Dr. Turnage testified that she did not write a report of her own, as she felt Nurse Fernandez' report was adequate. Dr. Turnage never created a separate written report containing her findings, and Nurse Fernandez's written report does not indicate that Dr. Turnage examined the victim.
At trial, in his objection to Dr. Turnage's testimony being admitted into evidence, defense counsel argued that he requested the results of all examinations of the victim, that Dr. Turnage performed an examination of the victim, that Dr. Turnage had results from that examination, that the district attorney had knowledge of those results, and that those results were intended for use at trial. The district attorney responded by stating that she had no tangible results from Dr. Turnage to give to Harris other than the Fernandez report that was given to Harris.
Upon review of the record, we agree with the trial court's assessment of Harris' discovery objection to the admissibility of Dr. Turnage's testimony:
THE COURT: With respect to Mr. Harris' motion, after hearing the evidence.... I see no prejudicial effect. Even if from the stretch of your imagination of the argument that some information from the State was not provided to you, her testimony clearly to me indicated that they provided you with whatever information Dr. Turnage had.
Harris had possession of the only reported results of the victim's physical examinations. Defense counsel effectively cross-examined Dr. Turnage. It cannot be said that he was surprised by the substance of Dr. Turnage's testimony. Harris has failed to show that he was prejudiced by the admission of Dr. Turnage's testimony into evidence. On this record, we find that the trial court did not abuse its discretion in allowing the testimony into evidence.
This assignment of error lacks merit.

*798 The Remaining Assignments of Error

The remaining assignments of error (numbers 4, 6, and 12) were neither briefed nor argued and therefore are considered abandoned. State v. Schwartz, 354 So.2d 1332 (La.1978); URCA Rule 2-12.4; State v. Kotwitz, 549 So.2d 351 (La.App. 2d Cir.1989), writ denied, 558 So.2d 1123 (La.1990).

CONCLUSION
Finding no merit to the assignments of error, we affirm Harris' convictions.
AFFIRMED.