774 So.2d 379 (2000)
STATE of Louisiana, Appellee,
v.
Frederick Lavell TAYLOR, Appellant.
No. 34,096-KA.
Court of Appeal of Louisiana, Second Circuit.
December 15, 2000.
*380 Louisiana Appellate Project by Amy C. Ellender, Counsel for Appellant.
Richard Ieyoub, Attorney General, Paul J. Carmouche, District Attorney, Catherine M. Estopinal, D. Bruce Dorris, Assistant District Attorneys, Counsel for Appellee.
Before STEWART, PEATROSS and KOSTELKA, JJ.
STEWART, J.
The defendant, Frederick Lavell Taylor, appeals his conviction of aggravated rape, a violation of La. R.S. 14:42, and sentence of life imprisonment without benefits of probation, parole, or suspension of sentence. Finding no merit in the three assignments of error asserted by the defendant, we affirm his conviction and sentence.

*381 FACTS
On May 19, 1999, at approximately 10:45 p.m., Pamela McKenna returned to her apartment in the Woodland Terrace Apartments in Greenwood, Louisiana, after an evening of dancing at a nightclub in Longview, Texas. After entering her apartment, McKenna encountered a young black male wearing a white t-shirt and black exercise pants. He came from the doorway of her bedroom. McKenna did not know the intruder, but he was later identified as Taylor, the defendant herein.
Upon seeing the defendant, McKenna screamed. The defendant grabbed her, placed his hand over her mouth, pushed her into the bedroom and onto the bed. McKenna continued to scream and struggle against the defendant by twisting, hollering, wrestling, and even managing to kick her bedroom wall. The defendant pulled McKenna to the floor where she landed in a sitting position with her head lodged against the boxspring on her bed. In an effort to muffle her screams, the defendant placed his hand over McKenna's mouth. McKenna bit his hand. The defendant then placed his thumb down her throat, causing her to gag and almost pass out. When the defendant removed his thumb from McKenna's mouth, he placed a knife to her chest and threatened to cut her if she did not stop making noise. McKenna ceased resistance. The defendant then laid the knife on the bed with the blade facing McKenna and began to straddle her. McKenna grabbed the knife by the blade in an attempt to remove it from the defendant's reach. The defendant grabbed the handle, and they struggled over the knife. Finally, the defendant pulled the knife from McKenna's grasp, cutting her hand in the process. The defendant beat McKenna numerous times with his fist, almost knocking her out and causing blood to spatter. McKenna tried to reach for her phone, but the defendant grabbed it from her, hit her with it, tried to disable it, and threw it down underneath the bed. With the defendant now on top of her, McKenna could no longer move. The defendant grabbed a shirt from the floor and used it to gag McKenna as she begged him not to do what he was about to do. The defendant told McKenna to remove her shorts. She initially refused, but then complied when he told her to do so a second time. The defendant removed his pants, and then raped her.
Upon completion, the defendant pulled his pants up and left the bedroom for a brief period. McKenna heard him open and shut the front door and walk through the apartment. The defendant returned to the bedroom and instructed McKenna to put on her shorts so that he could take her somewhere to clean her up. The defendant again threatened McKenna with the knife and warned her not to do anything stupid. After finding her purse and car keys, the defendant led McKenna from the apartment and to her car. As the defendant tried to unlock the car door, McKenna broke free and ran. The defendant caught her, hit her, dragged her to the side of the apartment building, stabbed her "over and over again" in the stomach with the knife, cut her throat, and stabbed her some more. He then grabbed her arm and pulled her behind the apartment building to a field with tall grass where he left her to die.
Once McKenna realized that she was alone, she crawled to the door of her next door neighbor's apartment for help. McKenna saw that her neighbor, Jimmy Hardy, was not yet home, so she began calling for help as loud as she could with her throat cut. Her calls were heard, and Mckenna was found by Diane Turner, a resident of the apartment complex, at approximately 11:15 p.m. At the same time, Hardy arrived and recognized McKenna who told him that she had been stabbed and asked him to call 911, which he did. McKenna also told Hardy that her assailant had been waiting for her in her apartment and that she did not know who he was. She identified him to Hardy as a *382 black man. McKenna was transported to LSU Medical Center in Shreveport where she was treated by Dr. Bradley Bilton. Dr. Bilton processed a rape kit and performed surgery on McKenna for her eleven stab wounds, eight of which were to her abdomen. Dr. Bilton observed a laceration under McKenna's tongue which he believed could have been caused by a thumb.
In the course of their investigation, the police discovered that McKenna's vehicle, a Camaro, was missing and entered the car identification into the National Criminal Intelligence Computer ("NCIC") system. Michael Mitchell, a friend of McKenna's, notified the police that he had loaned a cellular phone to McKenna and provided the phone number. With this information, the police identified the defendant as the suspect by tracing several phone calls made late on May 19 and early on May 20, 2000 from the cellular phone. Among those the defendant called were Carol Anderson, a cousin; Tommy Jackson, a friend and co-worker; and Ann Perkins, the mother of the defendant's son. According to Anderson, the defendant mentioned that he was on his way to California and stated, "I'm in a lot of trouble." Perkins testified that the defendant called once at midnight and told her that he had been in a fight in Bossier City and had blood on his clothes. He called again the next morning and said that he was traveling in a Camaro. According to Jackson, the defendant offered to sell his car to him and asked him to retrieve some clothes from the defendant's apartment, which was also located at the Woodland Terrace Apartments in close proximity to McKenna's apartment. Jackson went to the apartment complex and obtained the car, but he did not enter the apartment for the clothes due to the presence of the police at the complex. A subsequent search of the defendant's apartment by the police produced a box of clothing, which included underwear, t-shirts, and wind pants, the latter of which appeared to have a bloodstain on it.
On May 21, 1999, Frank Vasquez encountered the defendant off I-10 near Fort Handcock, Texas. Vasquez offered to help the defendant who appeared to be stranded on the side of the road due to a flat tire on the Camaro. Vasquez gave the defendant a ride into town and suggested that he seek assistance from a state trooper friend. Vasquez dropped the defendant near a state trooper station and noted that he took off running in the opposite direction from the station toward a restaurant.
On May 22, 1999, Jose Antonio Sanchez, a Texas state trooper, encountered the defendant in the Camaro stranded off I 10 between El Paso and Fort Handcock. Sanchez learned through the NCIC system that the vehicle was reported as stolen and that the defendant was wanted for sexual assault and attempted murder. After being arrested and receiving the Miranda warning, the defendant told Sanchez that he had stolen the car from a man in Bossier, but denied the other crimes. During a search incident to the arrest, Sanchez discovered on the defendant a knife with blood stains. The blood on the knife was later identified as McKenna's.
A crime scene investigation noted that McKenna's bedroom was in a state of disarray and the bedroom window was broken. A coke can containing two cigarette butts in a small amount of liquid and an empty pack of cigarettes was found in the kitchen of McKenna's apartment. Ashes were found on the kitchen counter and floor. McKenna did not smoke. The defendant's fingerprints were detected on two pieces of broken window glass and the coke can. Also, the defendant's DNA was detected on one of the cigarette butts found in the coke can; the other butt did not provide an adequate sample for testing purposes. DNA testing identified the defendant as the source of semen found in McKenna's vaginal vault. DNA testing disclosed a mixture of the defendant's and *383 McKenna's genetic material on underwear found in the defendant's apartment.
Taylor was charged by grand jury indictment with aggravated rape and was tried by jury beginning on December 14, 1999. After a jury was sworn, a juror reported to the trial judge's secretary that she recognized a person named Martin Taylor in the audience. A hearing was conducted at which the defendant unsuccessfully attempted to have the juror removed for cause. The defendant also moved for a mistrial which was denied. The trial court, after questioning the juror, determined that she was neutral and impartial.
The defendant testified at trial. He claimed that he had known McKenna for about two and one-half months and that they had sexual intercourse about five times. According to the defendant, he arrived at McKenna's apartment around 10:20 p.m., and had sex with her before he left. He denied raping and stabbing McKenna. The defendant asserted that McKenna had given him permission to use her car in connection with an "adventure trip" to California. He claimed that he was to leave her car in Fort Handcock, Texas, where he was to obtain another car and complete the trip to California where he would meet McKenna. He contended that the knife with McKenna's blood on it was found in the vehicle and not on him. However, he could not explain how it came to be in the car. As for his fingerprints on the broken window glass, the defendant explained that on one occasion, McKenna asked him to leave by the window so that a recently arrived guest would not see him.
At the conclusion of the defendant's presentation of evidence, the state successfully moved for the exclusion of the responsive verdicts of simple rape and attempted simple rape. The jury returned a unanimous verdict of guilty as charged of the crime of aggravated rape. On December 21, 1995, the defendant received the mandatory sentence of life imprisonment without benefits of probation, parole, or suspension of sentence. On appeal, the defendant assigns three errors pertaining to the sufficiency of the evidence, the failure of the trial court to dismiss a sworn juror who recognized a person in the audience, and the exclusion of the responsive verdicts of simple rape and attempted simple rape.

DISCUSSION

First Assignment of Error
In the first assignment of error, the defendant argues that the evidence presented at trial was insufficient to support a conviction of aggravated rape.[1] The defendant points out that he admitted having consensual sex with McKenna on the evening of May 19, 1999, but he denied having raped or stabbed her. Emphasizing that the only direct evidence of rape was McKenna's testimony, the defendant points out that a medical examination of McKenna disclosed no evidence of trauma to her vaginal area and that the physical evidence of his semen found on McKenna and the mixed genetic material on the underwear are consistent with his contention that his encounter with McKenna was consensual. Furthermore, the defendant argues that the evidence of post-rape brutality inflicted upon McKenna should not be considered in assessing the sufficiency of the evidence.
Under Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the proper standard for appellate review of a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the *384 crime proven beyond a reasonable doubt. State v. Hearold, 603 So.2d 731 (La.1992); State v. Bosley, 29,253 (La.App.2d Cir.4/2/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333; State v. Bellamy, 599 So.2d 326 (La.App. 2d Cir.1992), writ denied, 605 So.2d 1089 (La.1992).
The authority of the appellate court to review questions of fact in a criminal case is limited to the sufficiency of the evidence evaluation under Jackson v. Virginia, supra, and does not extend to credibility determinations made by the trier of fact. La. Const. art. 5, § 10(B); State v. Stevens, 33,700 (La.App.2d Cir.8/23/00), 766 So.2d 634; State v. Williams, 448 So.2d 753 (La.App. 2d Cir.1984). Great deference is accorded to the jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Bosley, supra. Absent internal contradictions or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Gradick, 29,231 (La.App.2d Cir.1/22/97), 687 So.2d 1071; State v.. White, 28,095 (La.App.2d Cir.5/8/96), 674 So.2d 1018, writ denied, 96-1459 (La.11/15/96), 682 So.2d 760.
As applied to the instant case, La. R.S. 14:42(A) defines aggravated rape as follows:
A. Aggravated rape is a rape committed... where the anal or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed under any one or more of the following circumstances:
(1) When the victim resists the act to the utmost, but whose resistance is overcome by force.
. . .
(3) When the victim is prevented from resisting the act by threats of great and immediate bodily harm, accompanied by apparent power of execution.
Rape is defined as the act of anal or vaginal sexual intercourse with a male or female person committed without the person's lawful consent. La. R.S. 14:41. Emission is not necessary and any sexual penetration, vaginal or anal, however slight is sufficient to complete the crime. Id. The testimony of the victim alone is sufficient to prove the elements of the offense. State v. Ingram, 29,172 (La. App.2d Cir.1/24/97), 688 So.2d 657, writ denied, 97-0566 (La.9/5/97), 700 So.2d 505.
At trial, McKenna testified in great detail about her violent encounter with the defendant on May 19, 1999. McKenna's version of events was consistent with and corroborated by the objective facts established by the evidence. Such facts included the disarrayed condition of McKenna's bedroom indicating a struggle; the broken bedroom window with the defendant's fingerprints on the broken glass; McKenna's blood on the knife taken from the defendant upon his arrest; the damaged phone with bloodstains found in the bedroom; the laceration under McKenna's tongue; the mixture of genetic material on the underwear found in the defendant's apartment; and the defendant's statements, during calls on the cellular phone in McKenna's car, that he was in trouble and had blood on his clothes. Although Dr. Bilton testified that he found no trauma to McKenna's vaginal area, he explained that this absence was not inconsistent with rape. The defendant's testimony that he knew McKenna prior to the incident and had engaged in consensual relations with her previously was not corroborated by any evidence. No other witness testified that McKenna was ever seen with the defendant. What is particularly telling is that McKenna, while in a state of emotional distress immediately after the vicious rape and attack, told Jimmy Hardy, her neighbor, that she did not know her assailant.
Viewing the entirety of the evidence in the light most favorable to the prosecution, we conclude that any rational trier of fact *385 could have found the essential elements of the crime of aggravated rape proven beyond a reasonable doubt. The jury, by rendering a unanimous verdict of guilty, decided to accept McKenna's testimony, which was amply supported by corroborating evidence, and discount the incredible tale concocted by the defendant. We find no error in the jury's determination.
The defendant also argues that evidence of the post-rape brutality, i.e., the vicious stabbing of McKenna, should not be considered in determining whether the evidence was sufficient to support the guilty verdict. No objection was raised to the introduction of this evidence. Even without evidence of the stabbing, the evidence of McKenna's struggle to resist the rape and the beating she endured at the defendant's hands was more than sufficient to establish the elements of aggravated rape. Additionally, evidence of the stabbing, which occurred immediately after the rape, was fully admissible for consideration as res gestae evidence. Such evidence is admissible when "related and intertwined with the charged offense to such an extent that the state could not have accurately presented its case without reference to the other crime." State v. Colomb, 98-2813 (La.10/1/99), 747 So.2d 1074, 1075. Here, the evidence of the additional violent attack which immediately followed the rape was so clearly related to and intertwined with the rape that the state could not have accurately presented its case without it.
In accordance with our stated reasons, we find that the defendant's first assignment of error is without merit.

Second Assignment of Error
In his second assignment of error, the defendant argues that the trial court erred in failing to dismiss a sworn juror who indicated that she knew a person in the courtroom. Alternatively, the defendant argues that the trial court erred in failing to grant a mistrial on this same issue.
The record shows that Penelope Brobst, after being sworn in as a juror, recognized Martin Taylor, a former co-worker with her at Burlington Coat Factory, in the courtroom as the jury was being led away at noon on December 13, 1999. Brobst noticed that Taylor appeared to be with the defendant's family. She reported this information by phoning the trial judge's office. The next day, the trial judge conducted a hearing at which Brobst testified that she worked with Martin Taylor for two and one-half years and that they had a working relationship only. Brobst stated that she had not seen Taylor since she left employment with Burlington in February 1997. Brobst believed that Taylor had a good reputation for honesty. When asked by the trial court whether the possibility that Taylor might be the defendant's brother would play any part in her deliberations as a juror, Brobst replied, "I don't believe so."
After further questioning of Brobst, defense counsel asserted a challenge for cause because Brobst knew a prospective witness, Martin Taylor. The state objected to this challenge, noting that no subpoena had been served for Martin Taylor to testify. The trial court denied the challenge. In doing so, the trial court noted that Brobst appeared to be bright, honest, sincere, and fair. Defense counsel then moved to exercise a peremptory strike against Brobst on the basis that she did not admit to recognizing Martin Taylor when each potential juror was questioned as to whether they knew anyone in the courtroom. The trial court denied the peremptory challenge upon finding there was no basis for it once the jury was sworn.[2] Finally, defense counsel moved for a mistrial for the same reason. Finding no evidence that Brobst would either believe or disbelieve Martin Taylor if he testified *386 and finding Brobst to be impartial and neutral, the trial court denied the motion for a mistrial.
A juror shall not be challenged for cause after having been temporarily accepted pursuant to La. C.Cr.P. art. 788 unless the challenging party shows that the cause was not known to him prior to that time. La. C.Cr.P. art. 795(A). A juror may be challenged for cause, by either the state or the defendant, on the ground that he is not impartial, whatever the cause of his partiality. La. C.Cr.P. art. 797(2). A challenge for cause should be granted, even when a prospective juror declares himself impartial, if the juror's responses as a whole reveal facts from which bias, prejudice or inability to render judgment in accordance with the law may be reasonably implied. State v. Allen, 95-1754 (La.9/5/96), 682 So.2d 713, 724 and cases cited therein.
As it pertains to the alleged error, La. C.Cr.P. art. 775(6) provides that a mistrial may be ordered and the jury dismissed when false statements of a juror on voir dire prevent a fair trial.
While it appears that defense counsel was not aware prior to accepting Brobst as a juror that she recognized Martin Taylor in the courtroom, it also appears that Brobst was not aware of Taylor's presence in the courtroom until after she was sworn as a juror. The voir dire proceedings were not transcribed and, therefore, are not included for review in the record on appeal. However, Brobst was questioned by the trial court and defense counsel after reporting her recognition of Taylor. It was not established at the hearing that Brobst made any false statements on voir dire. Accordingly, no basis for a mistrial exists.
Similarly, it was not established that Brobst's prior work relationship with Martin Taylor would influence her deliberations as a juror or cause her to not be impartial. The trial court found Brobst to be neutral, impartial, and honest. Nothing in Brobst's testimony causes us to question this finding. It is noteworthy that Martin Taylor was not called as a witness by either the state or the defendant. Also, it was never shown that the Martin Taylor recognized by Brobst was even related to the defendant in any way. The defendant's challenge for cause was properly denied.
For the reasons mentioned, the defendant's second assignment of error lacks merit.

Third Assignment of Error
In the third assignment of error, the defendant argues that the trial court erred in excluding the responsive verdicts of simple rape and attempted simple rape. The defendant contends that because McKenna was at a nightclub on the evening of the rape, the jury should have been allowed to consider whether she was intoxicated. If the jury believed her to be intoxicated on the evening of the rape, then the responsive verdict of simple rape would have been an option.
La. C.Cr.P. art. 802(1) provides that the trial court shall charge the jury as to the law applicable to the case. The trial judge is required to instruct the jury on any defense or phase of the case which is arguably supported by the evidence, whether or not it is accepted by the judge as true or believable. State v. Miller, 338 So.2d 678 (La.1976); State v. Williams, 606 So.2d 1387 (La.App. 2d Cir.1992); State v. Holland, 544 So.2d 461 (La.App. 2d Cir.1989), writ denied, 567 So.2d 93 (La.1990). With regard to responsive verdicts, La. C.Cr.P. art. 814(C) provides as follows:
C. Upon motion of the state or the defendant, or on its own motion, the court shall exclude a responsive verdict listed in Paragraph A if, after all the evidence has been submitted, the evidence, viewed in a light most favorable to the state, is not sufficient reasonably to permit a finding of guilty of the responsive verdict.
*387 If there is no evidence reasonably supporting a verdict, then such a verdict may be excluded as a possible responsive verdict. State v. Harris, 627 So.2d 788 (La.App. 2d Cir.1993), writ denied, 93-3188 (La.3/18/94), 634 So.2d 851.
Simple rape and attempted simple rape are responsive verdicts to an indictment of aggravated rape. La. C.Cr.P. art. 814(A)(8). Simple rape is defined by La. R.S. 14:43 as a rape committed when the anal or vaginal sexual intercourse is deemed to be without the lawful consent of a victim who is not the spouse of the offender because it is committed under any one or more of three circumstances, only one of which, as set forth below, is applicable to the alleged error:
(1) When the victim is incapable of resisting or of understanding the nature of the act by reason of a stupor or abnormal condition of mind produced by an intoxicating agent or any cause, other than the administration by the offender, and without the knowledge of the victim, of any narcotic or anesthetic agent or other controlled dangerous substance and the offender knew or should have known of the victim's incapacity.
La. R.S. 14:43(A)(1).
In State v. Harris, supra, the state filed a motion to exclude forcible rape, attempted forcible rape, simple rape, and attempted simple rape as possible responsive verdicts in the bench trial. The trial court granted the motion. The defendant was charged with aggravated rape on the basis that the victim was under the age of twelve. The evidence showed that the victim was indeed under the age of 12. There was no evidence that force, violence, or threats were used upon the victim. Thus, there was no support for a verdict of forcible rape. There was also no evidence to show the victim was mentally impaired, of unsound mind, intoxicated, or under the belief that the defendant was her husband. Thus, there was no support for a verdict of simple rape. This court found no error in the trial court's exclusion of the responsive verdicts pursuant to the requirements of La. C.Cr.P. art. 814(C).
Here, too, we find no error in the trial court's exclusion of the responsive verdicts of simple rape and attempted simple rape. The defendant's argument is predicated on speculation that a jury might infer that one who goes to a nightclub to dance will drink alcohol to the extent that he or she may become intoxicated. Even if such speculation is deemed reasonable, it is undermined by the defendant's own testimony. In describing his encounter with McKenna, the defendant never suggested that she was intoxicated or incapacitated in any way. McKenna testified that she never drank alcohol. A review of the record reveals no evidence or even suggestion that McKenna was under the influence of an intoxicating agent, anesthetic agent, or narcotic. Absent such evidence, it would not be reasonable for a jury to infer that McKenna was intoxicated from the mere fact that she went dancing at some time prior to her attack. Finding no evidence upon which a jury could have possibly returned a verdict of simple rape or attempted simple rape, we conclude the trial judge was not required to charge the jury as to the law applicable to either verdict.
This assignment of error lacks merit.

CONCLUSION
For the reasons discussed, the defendant's conviction of aggravated rape and sentence of life imprisonment without benefits is affirmed.
AFFIRMED.
NOTES
[1] Although the defendant did not file a motion for post-judgment verdict of acquittal pursuant to La. C.Cr.P. art. 821, this court has determined that arguments of sufficiency of the evidence will be considered on appeal in the absence of such a motion. State v. Green, 28,994 (La.App.2d Cir.2/26/97), 691 So.2d 1273.
[2] Defendant concedes on appeal that the peremptory challenge was properly denied by the trial court.