I t STEWART, J.
The defendant, Travis Glosson (“Glos-son”), entered a guilty plea to the charge of distribution of CDS II, cocaine, in violation of La. R.S. 40:967. Glosson now appeals the trial court’s denials of two pretrial motions and the length of his sentence. We affirm the defendant’s conviction and sentence.
FACTS
On November 17, 2000, Glosson was approached by an undercover agent, Perry Fleming (“Fleming”), and a confidential informant, Wade Hatfield (“Hatfield”), for the purchase of $200 worth of crack cocaine. Glosson got in a car with Fleming and Hatfield and had Fleming drive him home. When Glosson arrived at his house, he went inside his home and returned with drugs. Glosson reentered the vehicle and handed a piece of crack cocaine to Fleming who then gave the defendant $200.00. Fleming then drove Glosson back to where his car was parked. Fleming and Hatfield later met with Lieutenant Antonio German (“German”) of the Morehouse Parish Sheriffs Office Narcotics Division where Fleming gave German the piece of crack cocaine.
Glosson does not dispute the occurrence of a drug transaction, he disputes the facts surrounding the drug transaction. He contends that he did not give the piece of crack cocaine to Fleming. Instead, he asserts that he sold the drugs inside his home to Hatfield. The state answered the defendant’s bill of particulars in the affirmative when asked (1) if the state was charging defendant with distributing crack cocaine to Perry Fleming; and (2) does the state contend that defendant distributed the crack cocaine to | ¡¿Perry Fleming when defendant was present in the car along with Perry Fleming and the confidential informant. On the basis of his contention that he sold drugs to Hatfield inside the home, rather than to Fleming in the car as the state asserted, Glosson sought to have any evidence of a drug transaction inside his home excluded as other crimes evidence. He also filed a motion to have the state reveal an alleged agreement that it had with their confidential informant, Wade Hatfield. Both motions were denied. Glosson pled guilty to one count of distribution of cocaine, and was sentenced to twelve years at hard labor. He appeals the trial court’s denial of his two pretrial motions and his sentence as excessive.
DISCUSSION

Bill of Particulars

Article 1, § 13 of the Louisiana Constitution states in pertinent part, “In a criminal prosecution, an accused shall be informed of the nature and cause of the accusation against him.” The function of *652 the bill of particulars is to inform the accused of matters pertinent to the charge which the district court in its sound discretion considers necessary, in fairness, to permit the accused to defend himself. State v. Harris, 627 So.2d 788 (La.App. 2d Cir.1993); State v. Valentine, 565 So.2d 511 (La.App. 2d Cir.1990). However, a defendant is not entitled to a bill of particulars to discover the details of the evidence with which the state expects to prove its case. State v. Ford, 349 So.2d 300, 303 (La.1977).
In the instant case, the facts surrounding the exact location of the drug transaction |sare disputed. The defense contends the transaction occurred in the defendant’s house, the state contends that the transaction occurred in a car. The record reflects that there was only one transaction connected to the distribution charge by the state. There was not a completely different charge as defense counsel states in his brief.
Glosson argues that during the trial the state intended to elicit testimony about the facts of the drug transaction that supposedly occurred in his home from him and Hatfield, and that the testimony would be evidence of other crimes and should not be admissible without notice from the state to introduce such evidence at trial under State v. Prieur, 277 So.2d 126 (La.1973). Glosson further states that he was misled by the state’s answers to the bill of particulars.
The bill of information charged the defendant with distribution of cocaine on November 17, 2000. The bill of information did not state the name of the individual who received the drugs or the place where the distribution occurred. However, the defendant knew of the nature and cause of the accusation against him. He admitted to distributing crack cocaine on the day specified in the bill of information and did not show any signs of confusion regarding a possible separate occasion of distribution of the substance. The following colloquy took place between the trial judge and the defendant:
The Court: This bill that I’m looking at in your case ... do I have the record back? Here it is. I’ve got it right here. Okay. The bill that I’m looking at charges that you committed this offense on or about the 17th of November of the year 2000. It says you distributed cocaine. What did you do that day to get charged with this?
[4Mr. Glosson: Sir?
The Court: What did you do? How did you get charged?
Mr. Glosson: Well Wade Hatfield came into the resident [sic] of 1423 Rosina.
The Court: I can’t quite hear you. Now tell me a little bit louder.
Mr. Glosson: Wade Hatfield.
The Court: Wade Hatfield came, okay.
Mr. Glosson: Came into the resident [sic] of 1423 Rosina and purchased narcotics from me.
The Court: From you?
Mr. Glosson: Uh huh.
The Court: Okay. Now as I understand it Mr. Young you contend there was a distribution but it was to another party, right?
Mr. Young: Yes sir.
The Court: Can you state the basis of the State’s charge?
Mr. Young: Your Honor the State contends that on the 17th of November I believe is the date, he’s right. Wade Hatfield and undercover officer Perry Fleming were in a vehicle that picked up Mr. Hat ... excuse me, that picked up Mr. Glosson. He was getting his car washed. They went to his home, 1423 Rosina. They let Mr. *653 Glosson out. He went inside and got two hundred dollars worth of crack cocaine. Came back, got in the car. At that point he distributed the crack to the undercover officer and the undercover officer in turn gave him two hundred dollars. Then they took him back to where his car was.
Mr. Kidd: Judge that’s the purpose of our motion is that we, we don’t dispute anything about |Rpicking him up at the car wash, coming back to 1423 Rosina but we contend that it happened inside the house between Travis Glosson and Wade Hatfield.
The Court: Okay.
Mr. Kidd: It’s just a matter of contention.
The Court: Okay. But as I understand you, you are telling me that you did distribute crack cocaine or cocaine on that particular day. Is that correct?
Mr. Glosson: Yes sir.
Because Glosson charges that the drug transaction did not take place in the manner that he admits to, he asserts that the trial court erred in denying his motion to exclude evidence of other crimes. Specifically, the court failed to exclude his distribution of crack cocaine to Wade Hatfield inside the residence of 423 Rosina on November 17, 2000.
The state argues that the defendant was charged by bill of information with distribution of cocaine, which occurred on November 17, 2000. The state contends that this is the crime they intended to prove and it is irrelevant whether the transaction occurred in a car or in a house, because the same crime is being referred to by both parties.
In this instance, the defendant was fully aware of the nature and charge of his offense. The record does not reflect that the state’s answers to the bill of particulars misled or prejudiced the defendant in any way. This assignment is therefore without merit.
I RCrosby Plea
After the trial court denied Glos-son’s motion in limine to exclude other crimes evidence, he plead guilty pursuant to State v. Crosby, 338 So.2d 584 (La.1976). This assignment of error deals with a pretrial ruling on a denial of a motion, by the defense, to disclose requested information regarding a confidential informant. In State v. Crosby, supra, the Louisiana Supreme Court set out principles applicable to appellate review of assignments of error reserved at the time a defendant enters a plea of guilty. The court stated, “the functional purpose involved is to permit a fair and efficient method to review a central issue of a trial and a prosecution, in instances where the pre-plea ruling, if erroneous, mandates a reversal of any conviction which may result.” The court went on to say, the type of error usually here assigned represents a violation of a constitutional or statutory right which, for reasons beyond guilt or innocence, would mandate a reversal of any conviction resulting from a trial. When a conditioned plea is accepted reserving an assignment of error as to a pre-trial ruling of this nature, we will assume that the evidence questioned is of this prejudicial nature and will be offered at the trial, unless the record prior to the plea demonstrates otherwise.
Since a plea of guilty by its nature admits factual guilt and relieves the state of the necessity to prove it by a contested trial, assignments based upon incidents relating to procedural conduct of the merit-trial will be reviewed (if permitted to be reserved, as in the present case) upon the |7assumption that they represent harmless error, La.C.Cr.P. art. 921, unless the rec *654 ord clearly demonstrates otherwise. Crosby, supra at 591.
Glosson argues that since the identity of the confidential informant had been disclosed, the state is no longer protected under La. R.S. 44:3 and that he was entitled to any information from the state showing an agreement that it had with the confidential informant, Wade Hatfield. Glosson asserts that the disclosure of this alleged agreement would reflect that someone had set Hatfield up, and that the state offered Hatfield a deal if he would set up the defendant. Glosson further argues that he should have been allowed to show motive and bias on the part of Hatfield, since the state planned to elicit testimony from Hatfield regarding the alleged drug transaction that occurred in the defendant’s home, outside the presence of Fleming. Additionally, Glosson contends that under La.' R.S. 44:3, he is entitled to a full disclosure of all information related to Wade Hatfield, his involvement in this matter, and any agreement he may have had with the state. The state counters that it is unaware of any agreement made with Wade Hatfield or any confidential informant in relation to the Glosson’s case.
Louisiana Revised Statute 44:3(A) and (B) states in pertinent part:
(A) Nothing in this Chapter shall be construed to require disclosure of records, or the information contained therein, held by the offices of the attorney general, district attorneys, sheriffs, police departments, Department of Public Safety and Corrections, marshals, investigators, public health investigators, correctional agencies, communications districts, intelligence agencies, or publicly owned water districts of the state ...
(B) All records, files, documents, and communications, and information contained | ¡¿herein, pertaining to or tending to impart the identity of any confidential source of information of any of the state officers, agencies, or departments mentioned in paragraph A above, shall be privileged, and no court shall order the disclosure of same except on grounds of due process or constitutional law ...
The jurisprudence concerning the discretion vested in the trial court in determining what information about confidential informant’s identities or deals with the state is well established. For instance, in State v. Matthews, 382 So.2d 917 (La.1980), the Louisiana Supreme Court stated,
The informer privilege is the privilege of withholding the identity of an informant who supplies information to law enforcement officials concerning crime. It is founded upon public policy and seeks to advance the public interest in effective law enforcement. Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957). This court has consistently held that a confidential informant’s identity will be divulged only under exceptional circumstances. State v. Robinson, 342 So.2d 183 (La.1977); State v. Russell, 334 So.2d 398 (La.1976); State v. Thorson, 302 So.2d 578 (La.1974). The general rule is that the burden is upon the defendant to demonstrate exceptional circumstances and much discretion is vested in the trial judge on the question of whether the circumstances warrant disclosure. State v. Robinson, supra; State v. Dotson, 260 La. 471, 256 So.2d 594 (La.1971); cert. denied, 409 U.S. 913, 93 S.Ct. 242, 34 L.Ed.2d 173 (1972); State v. Greenbaum, 257 La. 917, 244 So.2d 832 (La.1971).
Recently, the court in State v. Bowie, 2000-3344 (La.4/3/01), 813 So.2d 377 noted:
In Brady v. Maryland, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the United States Supreme Court held that the suppression by the prosecution of *655 evidence favorable to the accused when requested, violates the defendant’s due process rights, if the evidence is material either to guilt or punishment without regard to the good or bad faith of the prosecution. The Brady rule encompasses evidence which impeaches the testimony of a witness when the reliability or credibility of that witness may be determinative of guilt or innocence. United States v. Bagley, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985); Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972); State v. Knapper, 579 So.2d 956, 959 (La.1991).
The Louisiana Supreme Court has long enforced a defendant’s right to production of arrest and conviction records of state witnesses for impeachment purposes which satisfy Brady’s materiality standard. State v. Bowie, supra, citing, State v. Robinson, 96-0343, 96-0353 (La.9/20/96), 679 So.2d 411.
The instant assignment of error falls into the “incidents relating to procedural conduct of the merit-trial” category discussed by the court in Crosby, supra. The record does not support that this error “represents a violation of a constitutional or statutory right which, for reasons beyond guilt or innocence, would mandate a reversal of any conviction resulting from trial.” Crosby, supra. The denial of defendant’s motion, by the trial court to grant the defense disclosure to documents reflecting the state’s alleged agreement with Wade Hatfield does not constitute a cause for reversal.
In the instant matter, the identity of Wade Hatfield, the confidential informer, had already been disclosed. In fact, he had been subpoenaed by the defense as a witness. The record indicates that during the pre-trial hearing on the defendant’s motion, defense counsel requested Hatfield’s rap sheet and “papers he filled out” prior to assisting Fleming with the drug buy. Defense counsel wanted to prove a theory that some sort of deal was made between the state and Hatfield. The state objected to disclosure of the requested information based on relevancy.
in Confidential informant identity and information pertaining to them are considered privileged information under La. R.S. 44:3. The informer privilege is the privilege of withholding the identity of an informant who supplies information to law enforcement officials concerning crime. It is founded upon public policy and seeks to advance the public interest in effective law enforcement. State v. Matthews, 382 So.2d 917 (La.1980), citing, Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957). Although the identity of Hatfield had been disclosed, that does not give the defense access to any and all information held by the state pertaining to this informant, without showing a violation of due process. In State v. Matthews, supra, the Louisiana Supreme Court noted that “much discretion is vested in the trial judge on the question of whether the circumstances warrant disclosure.”
In this case, the defense failed to show any apparent agreements made between the state and Hatfield, or any basis for a belief thereof. The record is void of any indication that the state withheld any type of Brady information in relation to any deals made with Hatfield. Furthermore, Hatfield is a witness for the defense not the state. Hatfield was present and waiting to testify at trial for the defense. The defense, therefore, had an opportunity to establish, through direct examination of its witness, any possible deals Hatfield may have made with the state prior to engaging in the undercover drug buy. The defendant has failed to show any violation of due *656 process or constitutional law by the denial of his motion.
_J¿¡The record also indicates that at the time of the trial court’s ruling, the trial was scheduled to begin and Hatfield was present and available to testify. The defendant could have chosen to go to trial and elicit testimony from Hatfield regarding the information he sought from the state regarding the informant’s criminal history or any deals that were made between the state and Hatfield. Glosson chose to enter a plea of guilty instead, waiving his right to a trial by jury.
Consequently, this assignment does not have any merit.

Excessive Sentence

In reviewing claims of excessive sentence, an appellate court uses a two-step process. First, the record must show adequate consideration of the criteria set forth in La.C.Cr.P. art. 894.1. State v. Smith, 433 So.2d 688 (La.1983). Remand is unnecessary when a sufficient factual basis for the sentence is shown. State v. Lanclos, 419 So.2d 475 (La.1982).
The second inquiry requires an examination of the circumstances of the case and the background of the defendant. A sentence is constitutionally excessive if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Bonanno, 384 So.2d 355 (La.1980).
A trial court has wide discretion to sentence within the statutory limits. Absent a showing of manifest abuse of discretion, a sentence is not set aside as excessive. State v. Square, 433 So.2d 104 (La.1983); State v. Washington, 29,478 (La.App.2d Cir.4/2/97), 691 So.2d 345.
m Glosson argues the trial court did not mention the defendant’s work history, education, or personal background when reciting reasons for sentencing. He further points out that “at the time of this alleged offense, the appellant was only twenty-six years old.” However, the trial court reviewed the applicable provisions of La.C.Cr.P. art. 894.1 and found paragraph A, subparagraphs (1), (2), and (3) applicable to the defendant. The record also indicates that the trial judge concluded that “there to be no mitigation as contained in 894.1 which would apply to the defendant.” Therefore, the trial court complied with the requirement to give adequate consideration of the criteria set forth in La.C.Cr.P. art. 894.1 under State v. Smith, supra.
In State v. Bonanno, supra, the Louisiana Supreme Court found that in sentencing a defendant, a court is required to examine the circumstances of the case and the background of the defendant. In this case, Glosson entered a guilty plea to one count of distribution of cocaine. In exchange for this plea, the state dismissed all other pending charges. The other pending charges were quite extensive and included car jacking, conspiracy to commit car jacking, distribution of cocaine, possession with intent to distribute cocaine, three counts of possession of a firearm by a convicted felon, possession of drug paraphernalia, and possession of marijuana. The trial court considered a pre-sentence investigative report (PSI) and the facts of this case. The court noted that Glosson’s criminal record contained a charge for two counts of distribution of cocaine in 1991. The court further noted that the defendant entered a plea of guilty to a lesser charge of |iaattempted distribution of cocaine in 1992 and received a sentence of four years at hard labor. The court also noted as part of the PSI the record of misdemeanor offenses and convictions. The record indicates that the trial court complied with Bonanno, supra. Moreover, Glosson re *657 ceived a significant benefit in exchange for his plea from the dismissal of all other charges pending against him in exchange for a guilty plea to one count of distribution of cocaine. The trial court did not abuse its discretion in sentencing him to twelve years at hard labor. This assignment is without merit.
CONCLUSION
Considering the foregoing, the defendant’s conviction and sentence are affirmed.
AFFIRMED.