756 So.2d 366 (1999)
STATE of Louisiana
v.
Jason MARCANTEL.
No. CR-98-825.
Court of Appeal of Louisiana, Third Circuit.
December 22, 1999.
*367 Douglas L. Hebert, Jr., District Attorney, Oberlin, for State of Louisiana.
Phyllis E. Mann, Alexandria, Paula C. Marx, Lafayette, for Jason Marcantel.
Jason P. Marcantel, pro se.
(Court composed of Judge HENRY L. YELVERTON, Judge ULYSSES GENE THIBODEAUX, and Judge MICHAEL G. SULLIVAN).
YELVERTON, J.
Jason Marcantel was indicted for aggravated rape, a violation of La.R.S. 14:42, and second degree kidnapping, a violation of La.R.S. 14:44.1. He was tried for the rape charge only. The jury found him guilty as charged. He appeals his conviction and sentence.

FACTS
On December 7, 1996, the victim, ten-year-old C. J., was visiting her grandparents in Allen Parish, Louisiana, for a parade called "Christmas in the Country." After the event, C.J. and other youths went "four-wheeler" riding on a dirt road behind her grandparents' residence.
During the ride, the children saw the twenty-three-year-old Defendant on a horse at the end of the dirt road. Thinking the stranger was lost, the children approached him to give him directions. The Defendant told them he was having trouble with his horse, and asked C.J. to ride with him to show him the way. She refused and her eleven-year-old male cousin offered to go in her place. The Defendant replied that he wanted C.J. to go with him, not her male cousin. After several more requests, the young girl finally agreed to go with the Defendant. He then took off with her on the horse. C.J.'s cousin tried to follow on the four-wheeler, but the Defendant waved the boy back to the others.
The Defendant then rode off the trail with the victim and into the woods. When *368 he tied the horse to a stump, she jumped off and tried to run away. The Defendant caught C.J. and pushed her down. She tried to scream, but he covered her mouth and threatened to hurt her. He then held her down and began pulling off her clothes. He fondled her, put his finger in her vagina, then inserted his penis into her, and began having intercourse. Finally, he stopped, told C.J. to get dressed, then walked to his horse. The young victim put her clothes on and started walking back.
Allen Parish Sheriff's Office personnel found the dirty, dazed victim. She gave minimal responses to their questions, indicating she had been sexually molested, but not mentioning the vaginal intercourse. Her clothing was turned over to authorities; subsequent analysis revealed blood and fecal matter in her panties and shorts, and one spot of blood near the shoulder of her shirt. A doctor examined C.J. at a nearby hospital, but she was withdrawn and passively uncooperative. The young girl was stiff and would not spread or raise her legs sufficiently for a pelvic examination. After repeated questioning about whether anything had been put between her legs, she responded, "He tried to put his finger"; she did not mention penile penetration or intercourse.
Police caught the Defendant at about 10:00 p.m. on December 7. He initially denied seeing any of the children that day but eventually stated he had touched C.J.'s breasts and put a finger in her vagina while they were on the horse. Laboratory analysis of his clothing revealed blood and fecal matter on his shirts and jeans. DNA analysis of the blood on the shirts indicated the chance of the blood not being C.J.'s was approximately one in two and four-tenths million persons. The sample from the jeans was too small to measure.
Approximately three weeks after the incident, the victim advised her mother that she had been raped by the Defendant, i.e., he had forced her to have vaginal intercourse with him. Her mother took her to a doctor (the second one to examine her), who found hymenal lacerations consistent with multiple penetrations from an erect adult penis. The pattern of the lacerations was not consistent with penetration by a finger. C.J.'s injuries also indicated that she had not had sexual contact with anyone before. During the examination, the victim told the doctor that the Defendant put his penis inside her vagina and that it hurt. The degree of healing was consistent with the date of the attack.

ERRORS PATENT
In accordance with La.Code Crim.P. art. 920, all appeals are reviewed by the court for errors patent on the face of the record. After reviewing the record, we have discovered what might be argued to be an error patent.
The record is not clear as to whether the jurors were sequestered from the moment they were sworn as required by La.Code Crim.P. art. 791(B) in capital cases. Although the State did not seek the death penalty, the case retained its capital classification for procedural purposes. State v. Schrader, 518 So.2d 1024 (La.1988), cert. denied, 498 U.S. 903, 111 S.Ct. 265, 112 L.Ed.2d 221 (1990). The charge, aggravated rape of a child under twelve, is punishable by death or life imprisonment. The record does not tell us why the State chose not to seek the death penalty. It is possible that the State or the trial court was under the belief that the death penalty had been declared unconstitutional. In State v. Wilson, 96-1392, 96-2076 (La.12/13/96); 685 So.2d 1063, cert. denied 520 U.S. 1259, 117 S.Ct. 2425, 138 L.Ed.2d 188 (1997), the supreme court noted that both the Criminal District Court, Parish of Orleans, and the Fourth Judicial District Court, Parish of Ouachita, had found the death penalty was unconstitutional for the offense of the aggravated rape of a child under twelve. The court in Wilson, however, reversed these two district court decisions, finding that the *369 death penalty is constitutional for the aggravated rape of a child under twelve. That decision was rendered on December 13, 1996, only a few days after the present Defendant committed the offense at issue. Hence, there may have been some question as to whether the death penalty could be sought. Nonetheless, as stated by the court in Schrader, the case retained its classification as a "capital" case for procedural purposes.
As in the present case, the issue before the court in Schrader was whether the trial court's failure to sequester the jury was an error patent. Finding the lack of sequestration was an error patent but did not amount to reversible error, the court stated:
Our review of the record in this case reveals the jurors were not sequestered during the trial of this case. It is true that defendant could not have been sentenced to death due to the constitutional infirmities of the statutes in place at the time of the homicide. Nevertheless, this homicide prosecution retained for procedural purposes its "capital" classification. Thus, prior jurisprudence would indicate defendant was entitled to the protections afforded the accused in a capital case, including a sequestered jury.
Although defendant did not object to this error or urge it on appeal, the error is considered by this court since it is an error discoverable by a mere inspection of the record.
We now hold, despite its long lineage, the jurisprudential presumption of prejudice for "capital cases" does not apply to a "capital case" where the defendant never faced the prospect of the death penalty and where counsel failed to press the point in the trial court, or object to the lack of sequestration. In the absence of actual prejudice, this right to sequestration is waived.
* * *
In the present case the defendant did not object to the lack of sequestration. Moreover, the potential impact on the fairness of the proceedings was no greater than for non-capital cases. It is true that the case remained "capital" under the procedural classification of our statutes; however, it was in fact not capital in the sense of the cases such as Parker and Luquette wherein this court presumed prejudice. That is, the defendant did not face the death penalty, nor did the jury face the heightened pressure inherent in having to consider the death penalty. Accordingly, the failure to sequester the jury in this case was not reversible error.
Schrader, 518 So.2d at 1036-1038 (citations omitted).
The present case is distinguishable from Schrader because the death penalty in the present case was ruled unconstitutional by district courts rather than by the United States Supreme Court. Additionally, the State's reason for not seeking the death penalty is unclear. Nevertheless, because the Defendant was not exposed to the death penalty, did not object to the lack of sequestration, and does not allege on appeal that he was prejudiced by the lack of sequestration, we find that the lack of sequestration (if the jury was in fact not sequestered) was harmless error.

ASSIGNMENT OF ERROR NO. 1
In his first assignment, the Defendant argues the lower court, by admitting a sworn videotaped statement of the victim, violated his right to confront witnesses against him. The statements were admitted as part of a videotaped interview of C.J. by Dr. Patricia Post, a clinical psychologist. A court reporter was present at the October 7, 1997 interview solely to administer the oath to tell the truth. The State had previously moved, on September 22, 1997, to record C.J.'s interview with Dr. Post and utilize it at trial, pursuant to La.R.S. 15:440.1 et seq. The rules *370 for admitting such videotaped statements are set forth in La.R.S. 15:440.5(A) and (B):
A. The videotape of an oral statement of the child made before the proceeding begins may be admissible into evidence if:
(1) No attorney for either party was present when the statement was made;
(2) The recording is both visual and oral and is recorded on film or videotape or by other electronic means;
(3) The recording is accurate, has not been altered, and reflects what the witness or victim said;
(4) The statement was not made in response to questioning calculated to lead the child to make a particular statement;
(5) Every voice on the recording is identified;
(6) The person conducting the interview of the child in the recording is present at the proceeding and available to testify or be cross-examined by either party;
(7) The defendant or the attorney for the defendant is afforded an opportunity to view the recording before it is offered into evidence; and
(8) The child is available to testify.
B. The admission into evidence of the videotape of a child as authorized herein shall not preclude the prosecution from calling the child as a witness or taking the child's testimony outside of the courtroom as authorized in La.R.S. 15:283[1]. Nothing in this Section shall be construed to prohibit the defendant's right of confrontation.
The Defendant's brief does not contest that the requirements of the statute were met. Rather, he now contends that admission of the videotape violated his federal constitutional right to confront witnesses against him. He relies heavily on Idaho v. Wright, 497 U.S. 805, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990), which held that admission of hearsay statements by a child victim in a sexual assault case violated a defendant's confrontational rights, even though admitted pursuant to a statutory hearsay exception. See also the analysis in Ohio v. Roberts, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980).
This circuit has recently analyzed a statute similar to La.R.S. 15:440.5 in light of federal constitutional requirements. In State v. Wright, 96-786 (La.App. 3 Cir. 2/19/97); 690 So.2d 850, writ denied, 97-665 (La.9/26/97); 701 So.2d 978, the defendant was convicted of aggravated rape of a juvenile. On appeal, this court held that the lower court had improperly authorized the victim to testify via closed-circuit television, rather than in the courtroom. Although La.R.S. 15:283 requires a specific finding that the child would suffer serious distress if forced to testify in open court, Wright, 690 So.2d at 853, quoting Maryland v. Craig, 497 U.S. 836, 856, 858, 110 S.Ct. 3157, 3169, 3170, 111 L.Ed.2d 666 (1990) (emphasis added) held the requirement inadequate:

*371 Thus, the Confrontation Clause requires, as a prerequisite to use of a statute authorizing video testimony in such cases, that the trial court make a specific finding that the procedure requested is necessary to protect the welfare of the particular child witness who seeks to testify and that "the child witness would be traumatized, not by the courtroom generally, but by the presence of the defendant." Furthermore, the trial court "must find that the emotional distress suffered ... is more than de minimis, i.e., more than `mere nervousness or excitement or some reluctance to testify.'"
The trial court in Wright had not made the specific finding required by the jurisprudence; therefore this court determined that error had occurred.
The record in the present case lacks a specific finding of imminent trauma to the child witness due to the Defendant's presence, were she to testify in open court. However, it does not appear this or any other constitutional issues were raised below. On September 22, 1997, the State filed a Motion and Order to Videotape Statement. The first paragraph contained a brief recitation of the charges, the second made a general assertion that recording the statement and utilizing it at trial, pursuant to La.R.S. 15:440.1 et seq., would be in C.J.'s best interest. The third paragraph contains the district judge's order that C.J.'s statement be recorded on videotape and utilized in accordance with La. R.S. 15:440.1 et seq.; it was signed the same day as the date of filing.
Also on September 22, the State filed a Motion and Order for Taking Testimony Outside of Courtroom, pursuant to La.R.S. 15:283. The third paragraph makes a general assertion that testifying in open court would result in "serious emotional distress" to the victim. In Wright, this Court held such general language to be inadequate. The judge's order, also signed the same day, ordered a show-cause hearing on October 9, 1997. The Defendant was thus given an opportunity, pre-trial, to contest the use of closed-circuit testimony against him. Given the differing order language of the two motions, the Defendant did not have such an opportunity regarding the videotaped statement.
The show-cause hearing itself does not appear to have been transcribed for the record. However, the minutes for that hearing are fairly detailed, and neither they nor the original motion give any indication that La.R.S. 15:440.1 et seq. was at issue or even discussed. Subsequently, the issue was fully addressed at trial during the State's process of laying a foundation to admit the video. The Defendant raised several objections during this process. After the videographer, Douglas Douget, and Dr. Patricia Post, who interviewed C.J. on the video, had testified, the following colloquy took place:
MR. DEMORUELLE:
May it please the court, Your Honor, if there's no requirement that a transcription is made, what is the purpose of a court reporter. The State will tell you that the court reporter's purpose is only to swear the witness. The court reporter is the only certified person in this room to take the tape. Mr. Doucet [sic] tells us that he did not view the copy. We don't know if the copy is the same as their Super VHS. There is no transcript and there's no way to tell without transcript whether it's been altered and we object to the introduction.
* * * * *
MR. DEMORUELLE:
Before the State shows the video to the jury, I would like the Court [sic] an in camera inspection of the video with Counsel present. There are some objections that I want to make and I don't want to object while the video tape is going. I want the objections before the jury sees the tape. There are some things that are objectionable.

*372 * * * * *
MR. DEMORUELLE:
May I have a short break?
* * * * *
MR. DEMORUELLE:
(Inaudible) that some of the questions that Dr. Post asked are posed are [sic] either leading or in one particular incident that I'm talking about, she actually told the young lady what to say. For example, Kristi was talking about his thing and she said, "Do you mean his penis?"
* * * * *
MR. DEMORUELLE:
That's what I'm going to object and of course I think that the judge is going to overrule the objection. My suggestion is that we'll just make the objection one time through the whole tape and just make it general or do I have to ...
THE COURT:
Maybe we can stipulate so we won't have to watch the tape twice.
MR. DEMORUELLE:
That's what I'm getting at.
THE COURT:
Is that okay with you, Mrs. Cole?
MRS. COLE:
Sure. I understand. I knew that he was going to object.
MR. DEMORUELLE:
Let me get back on the main record.
THE COURT:
All right. Mr. Demoruelle, I believe that you would like to make an objection on the record.
MR. DEMORUELLE:
Yes, sir. I already made one objection regarding the introduction of the tape as to its accuracy, but that's already been ruled. In this particular instance, when I viewed the tape, Your Honor, in some instances Dr. Post, I believe, suggested answers to the young lady. For example, when she was talking about private parts, Dr. Post said, and the Court will readily observe this on the tape, "You mean his penis?" This young lady apparently did not know that term and did not know the meaning of that word and I suggest or my objection is I believe that Dr. Post was suggesting the answer to the witness. Therefore, I find that objectionable. Also, even though this was a young child, I think after the Court views the tape, that you'll find that Dr. Post was very leading and led the witness throughout the whole testimony and therefore we object to the leading nature of the questions by Dr. Post, number one. And number two, in those instances, we object where Dr. Post suggested the answer to the witness. That's our objection.
* * * * *
MR. DEMORUELLE:
I think that's for the Court to determine. Even though she may have inadvertently done it, I think that she did do it, meaning Dr. Post when I say she. Therefore, we object and we made the objection general and continuing throughout the examination of the witness by Dr. Post.
THE COURT:
Okay. Also, Mr. Demoruelle, I have viewed the video tape already. I had to do an in camera inspection to make the determination of whether or not the video tape may have included exculpatory evidence and therefore had to rule on whether a copy should be supplied to you. Do you wish for me to review the tape?
MR. DEMORUELLE:
No, sir, I believe that Your Honor has already indicated (inaudible) together with both counsel. I don't think that it would be necessary. I simply don'tI want to make the objections general so *373 that we don't have to keep interrupting and turning the tape on and off.
* * * * *
MR. DEMORUELLE:
I would like my objection noted for the record and for the purpose of sustaining the record and maybe for appeal, I would simply like to make the observation that this is, I believe, a danger in this type of proceeding where you have an uncontrolled witness who is untrained (inaudible) and very prejudicial.
THE COURT:
Your objection is noted for the record. However the Court will note that Louisiana Revised Statute 15:440.1 and all of the included statutes thereafter, if there are any problems inherent in those, that is caused by the legislature and not by this Court. All right. Anything else, Mr. Demoruelle?
MR. DEMORUELLE:
No, sir.
THE COURT:
Anything else, Mrs. Cole?
MRS. COLE:
No, Your Honor.
* * * * *
MR. DEMORUELLE:
For the reasons stated prior, we maintain and continue our objection.
THE COURT:
And your objections were overruled. Do you want to mark it State-1 or do you have a particular number?
* * * * *
MR. DEMORUELLE:
And we would make our objection continuing. Nobody had certified that the
. . .
THE COURT:
I understand.
MR. DEMORUELLE:
... the Super VHS and the copy are the same.
* * * * *
THE COURT:
Okay. It is received into evidence as State-1. Also, for the record, prior to the jury being sent out, there was the objection made by Mr. Demoruelle. When the jury comes in, I will give them a little bit of indication as to what happened, so they're not left hanging.
While the Defendant's current argument is based upon federal constitutional considerations, the objections at trial focused upon the statutory requirements of La. R.S. 15:440.5. The Defendant's assignment thus falls afoul of the contemporaneous objection rule, La.Code Crim.P. art. 841. Application of Article 841 precludes further review; although trial counsel argued extensively in opposition to admission of the videotape, he did not raise constitutional issues. Without such issues before it, the trial court had no opportunity to address them. This assignment lacks merit.

ASSIGNMENT OF ERROR NO. 2
By this assignment, the Defendant argues his constitutional rights to confront the witnesses against him were violated when the district court allowed C.J. to testify outside the courtroom via closed-circuit television. However, the Defendant stipulated that such testimony would be allowed. This stipulation occurred at the October 9, 1997 show-cause hearing described in the previous assignment. Thus, the Defendant waived his right to confront the victim. It is well-settled that this right is waivable. Having waived his right, the Defendant cannot raise it for the first time on appeal. Therefore, this assignment is without merit.

ASSIGNMENT OF ERROR NO. 3
In this assignment, the Defendant contends the trial court erred by allowing C.J.'s mother to testify about statements *374 C.J. made to her regarding the rape. The Defendant objected, but the trial court ruled the statement was not being offered to prove the truth of the matter asserted. On appeal, the State argues the statements were not hearsay because they were admitted pursuant to La.Code Evid. art. 801 D(1)(d), which states that a statement is not hearsay if it is consistent with the declarant's testimony and is one of initial complaint of sexually assaultive behavior.
Obviously, the State's contention does not directly answer the Defendant's argument, which relies on federal constitutional grounds. However, there are some important points where the Defendant's argument and the State's counter-argument intersect, and provide a resolution to the present assignment. First of all, the "initial complaint" or "first complaint" stands as a well-rooted exception to the general rules of evidence. Even before its codification under Article 801, it was recognized as a subspecies of what was formerly known as res gestae. See State v. Comeaux, 319 So.2d 897 (La.1975). Applying Idaho v. Wright, 497 U.S. 805, 110 S.Ct. 3139, 111 L.Ed.2d 638, to one of Louisiana's public records exceptions, the Louisiana Supreme Court found that exception to be sufficiently "firmly rooted" to satisfy the constitutional concerns discussed in Idaho v. Wright. State v. Powdrill, 95-2307 (La.11/25/96); 684 So.2d 350 concurrence, 95-2307 (La.12/30/96); 694 So.2d 892.
Second, it is quite clear that the victim, C.J., was available to testify and did so; she was also subjected to cross-examination. Louisiana courts have previously discussed confrontation problems in light of Ohio v. Roberts, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 and Idaho v. Wright, 497 U.S. 805, 110 S.Ct. 3139, 111 L.Ed.2d 638. For example, in State v. Brown, 618 So.2d 629, 634 (La.App. 2 Cir.) writ denied, 624 So.2d 1222 (La.1993) the court stated:
Moreover, defendant's confrontation clause challenge is without merit for a second reason. The declarant, Lottie Brown, was present and testified at trial. Accordingly, this case differs from Ohio v. Roberts, supra, and Idaho v. Wright, supra, where the hearsay declarant was unavailable for testimony at trial. Where, as here, the hearsay declarant is present at trial and subject to cross-examination, the traditional protections of the oath, cross-examination, and the opportunity for the jury to observe the witness's demeanor satisfy the constitutional requirements of the confrontation clause.
Likewise, while discussing La.R.S. 15:283 in relation to Ohio v. Roberts and other federal constitutional jurisprudence, Louisiana's Fifth Circuit Court of Appeal observed that the oath, the opportunity to observe the witness's demeanor, and the opportunity to cross-examine the witness represent the elements of substantial compliance with confrontation requirements. State v. Smith, 95-734 (La.App. 5 Cir. 1/30/96); 668 So.2d 1260 writ denied, 98-1406 (La.10/16/98); 726 So.2d 899. That circuit has also repeatedly stated that the main purpose of the confrontation right is to secure defendants' rights to cross-examination. State v. Carter, 96-358 (La.App. 5 Cir. 11/26/96); 685 So.2d 346.
In light of the jurisprudence discussed, the Defendant's argument fails. This assignment has no merit.

ASSIGNMENT OF ERROR NO. 4
In this assignment, the Defendant argues the lower court erred by allowing hearsay testimony from Dr. Earl Soileau, who related certain statements that C.J. had made to him about the assault. The doctor also testified that the statements were made to him for the purposes of his medical examination of C.J. The State argues that such statements were properly admitted pursuant to La.Code Evid. art. 803(4):

*375 The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
* * * * *
Statements made for purposes of medical treatment and medical diagnosis in connection with treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to treatment or diagnosis in connection with treatment.
For the same reasons stated in the previous assignment, the Defendant's argument regarding the bulk of Dr. Soileau's testimony fails. First, the "medical testimony" exception to hearsay rules is firmly rooted. Brown, 618 So.2d 629. Second, the Defendant's confrontation interests were protected through his cross-examination of C.J.
We note that the defense brief relies heavily upon Ohio v. Roberts and Idaho v. Wright throughout his various assignments. However, those cases differ from the present one in that the declarant was unavailable. Here, the declarant was available and was cross-examined by the Defendant.
The State appears to acknowledge that a portion of the doctor's testimony fell outside of the "medical treatment" exception. Soileau recounted some of C.J.'s statements about details of the attack. However, the Defendant failed to object at this point, so he is precluded from making this argument on appeal. La.Code Crim.P. art. 841. We will add, unnecessarily, but for the sake of completion, that were the court to analyze this assignment fully, it would find no error, due to the reasons already given in this and the previous assignment. Even if error were found, it would be harmless because the Defendant was able to protect his own interests through cross-examination.
Thus, the Defendant's argument fails; this assignment lacks merit.

ASSIGNMENT OF ERROR NO. 5
In this, his final assignment of error, the Defendant claims the trial court erred by allowing the victim's psychologist, Dr. Patricia Post, to testify regarding statements the victim made to her. Further, the trial court is said to have erred by allowing the psychologist to give opinions about the victim's testimony.
On direct, Dr. Post stated that C.J. was credible. Later, on re-direct, she testified "I believe she was raped and sexually assaulted by this individual." The second statement was clearly improper. Regarding both statements, having an expert vouch for a witness's credibility is error. State v. Foret, 628 So.2d 1116 (La.1993).
However, the Defendant's counsel failed to raise any objection to the testimony, either on direct or re-direct. Absent a contemporaneous objection at trial, this issue should not be considered for the first time on appeal.
Further, even were we to proceed with an analysis of this assignment and find error, it would be harmless. While the State's case in Foret rested heavily upon the victim's testimony, the instant case included strong medical evidence that the young victim had been forcibly penetrated with an adult penis; blood evidence indicated the Defendant had been the man who assaulted her; her cousin was able to corroborate the details of the initial abduction.
Thus, despite the clear impropriety of Dr. Post's testimony, this error, even if considered, would be harmless.
This assignment lacks merit.

DEFENDANT'S ADDENDA
The defense brief designates its five assignments as "A" through "E"; these have been disposed of. However, the brief also argues paragraphs "F," "G," and "II." F *376 and G are merely arguments that the previous assignments should be considered despite any lack of contemporaneous objection; and that the magnitude of the errors is so great that none of them should be considered harmless. These arguments have already been considered and rejected.
Regarding assignment "II" the Defendant argues his due process rights were violated by "inflammatory and prejudicial remarks" during rebuttal closing argument. Much of the purported force of this argument relies upon the Defendant's characterization of State testimony as improper hearsay. If the State did "emphasize already prejudicial hearsay" in its rebuttal, as the Defense brief claims, then it would indeed be "inflammatory and prejudicial" rebuttal argument. However, our earlier discussion of the various complained-of statements shows that the bulk of the evidence was either not hearsay at all, or was admissible via recognized hearsay exceptions. Where error occurred, it was harmless.
However, the State did apparently emphasize a problematic piece of trial evidence: Dr. Post's testimony that C.J. was believable and her further testimony regarding the ultimate issue of the Defendant's guilt. During the rebuttal, as with the original testimony on these matters, the Defendant failed to raise a contemporaneous objection. For that reason, these matters will not be considered for the first time on appeal.
Allowing the State to repeatedly bolster the credibility of its witness led to at least one clear error, as noted in the fifth assignment. However, as previously mentioned, C.J.'s testimony was corroborated by other evidence, and was not shown to be inherently unreliable.
The defense brief also argues the State mis-characterized the facts of the case by claiming that C.J. had "never varied" in her accusation that the Defendant raped her. He now points out that C.J. initially indicated sexual intercourse had not occurred and did not report the rape for another three weeks. However, the State's brief notes that during closing arguments, it repeatedly admitted that C.J. did not immediately report the rape. This matter amounts to no more than a disagreement over the characterization of the closing and rebuttal arguments. There is no cognizable error as to this point. And again, the Defendant failed to raise a contemporaneous objection.
Finally, the Defendant contends the State's rebuttal improperly referred to the Defendant's eluding police searchers, including tracking dogs. The Defendant now claims any statement regarding tracking dogs was factually incorrect and therefore improper. This argument is a nonissue regarding the overall case. The Defendant makes no attempt to demonstrate any prejudice from this reference to the tracking dogs, and none is apparent.
The assignments designated "F," "G," and "II" lack merit.

CONCLUSION
The Defendant's conviction and sentence are affirmed.
AFFIRMED.
THIBODEAUX, J., dissents and assigns written reasons.
THIBODEAUX, J., dissenting.
The defendant's right to confront his accuser and a witness against him guaranteed by the Confrontation Clause of the Sixth Amendment to the United States Constitution and Article 1, § 16 of the Louisiana Constitution was violated. The defendant raised, as the majority notes, several objections to the use of the video of the minor victim. However, the majority asserts that he did not object properly under La.Code Crim.P. art. 841, the contemporaneous objection rule and, therefore, our review is precluded because constitutional issues were not specifically raised in the objections. The failure to follow with exact specificity the letter of Article 841 is not fatal, in my view. Because a substantial constitutional right is involved, it is not necessary to specifically *377 delineate the particular legal theory or articulate a specific constitutional provision to preserve that objection for appellate review. All that is needed is a general objection. Furthermore, even if an objection is lacking, Rule 1-3 of the Uniform RulesCourts of Appeal permits an appellate court to address such grave concerns in "the interest of justice." Moreover, when serious constitutional issues are involved, such as here, our court has not been hesitant to examine the issue despite the lack of a contemporaneous objection based specifically on constitutional grounds. See State v. Rosette, 94-1075 (La.App. 3 Cir. 3/22/95); 653 So.2d 80; State v. Holmes, 620 So.2d 436 (La.App. 3 Cir.1993).
Although there is no absolute right to face-to-face confrontation in every case, there is clearly a preference for face-to-face confrontation of a witness or an accuser. Maryland v. Craig, 497 U.S. 836, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990). Our circuit has previously examined a related statute, La.R.S. 15:283, and concluded that the requirements of that statute, even if followed, were still inadequate to satisfy the dictates of the right to confrontation. Similarly, I find that the procedures in La.R.S. 15:440.5 are inadequate based on Coy v. Iowa, 487 U.S. 1012, 108 S.Ct. 2798, 101 L.Ed.2d 857 (1988), and State v. Wright, 96-786 (La.App. 3 Cir. 2/19/97); 690 So.2d 850, writ denied, 97-665 (La.9/26/97); 701 So.2d 978.
The majority dismisses the defendant's argument that his constitutional right to confront the witness was violated when the district court allowed the minor victim to testify outside of the courtroom via closed-circuit television by reasoning that the defendant stipulated to the procedure. The court minutes of October 9, 1997 on the hearing on the Rule to Show Cause and for a Preliminary Hearing reflect the following:
The parties stipulate as follows: that the defendant has no opposition to the testimony of [C.J.] being taken outside of the courtroom and transmitted to the courtroom.
At the trial, the trial judge announced that "at this point, the attorneys and I will go to the library. The clerk will come and place her [C.J.] under oath." The defendant did not stipulate to his absence outside of the presence of the defendant. He only stipulated to the transmission of the testimony to the jury via closed-circuit television. This is substantially different from waiving his presence. Although the victim was cross-examined by the defendant's attorney, that cross-examination was outside of the presence of the defendant.
I do not find this violation of the right to confrontation to be harmless. The minor victim was the only victim who could say that penile penetration had occurred. She denied such an act when questioned by a physician a few days after the accident. That examining physician did not find any bruises or redness between her thighs. It was only about three weeks later that a physician who examined her concluded that she could have been penetrated by an adult male penis. Under these circumstances, I cannot say that the verdict was surely "unattributable to the error." State v. Johnson, 94-1379, p. 14 (La.11/27/95); 664 So.2d 94, 100.
For the foregoing reasons, I respectfully dissent.
NOTES
[1] La.R.S. 15:283 provides, in pertinent part:

A. On its own motion or on the motion of the attorney for any party, a court may order that the testimony of a child under fourteen years of age who may have been physically or sexually abused be taken in a room other than the courtroom and be simultaneously televised by closed circuit television to the court and jury, when the court makes a specific finding of necessity based upon both of the following:
(1) Expert testimony that the child would be likely to suffer serious emotional distress if forced to give testimony in open court.
(2) Expert testimony that, without such simultaneous televised testimony, the child cannot reasonably communicate his testimony to the court or jury.
B. The court shall ensure that the child cannot see or hear the accused unless such viewing or hearing is requested for purposes of identification. However, the court shall ensure that the accused is afforded the ability to consult with his attorney during the testimony of the child.