# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 04-1558

**STATE OF LOUISIANA**

**VERSUS**

**BOOKER EARL LOYDEN**

**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 256385
HONORABLE W. ROSS FOOTE, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

## MARC T. AMY
## JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of Jimmie C. Peters, Marc T. Amy, and Elizabeth A. Pickett, Judges.

**CONVICTIONS AFFIRMED; SENTENCES FOR AGGRAVATED RAPE AMENDED WITH INSTRUCTIONS, AND AFFIRMED AS AMENDED; SENTENCE FOR AGGRAVATED ORAL SEXUAL BATTERY VACATED AND REMANDED WITH INSTRUCTIONS.**

    **James C. Downs**
    **District Attorney**
    **Lowell C. Hazel**
    **Assistant District Attorney**
    **9th Judicial District Court**
    **701 Murray Street**
    **Alexandria, LA  71301**
    **(318) 473-6650**
    **COUNSEL FOR APPELLEE:**
        **State of Louisiana**

    **George Lewis Higgins, III**
    **Post Office Box 3370**
    **Pineville, LA  71361-3370**
    **(318) 473-4250**
    **COUNSEL FOR DEFENDANT/APPELLANT:**
        **Booker Earl Loyden**

**Booker Earl Loyden**
**Rapides Parish Department of Corrections - 3**
**7400 Academy Drive**
**Alexandria, LA   71303**

AMY, Judge.

Following a jury trial, the defendant was convicted of two counts of aggravated rape and one count of aggravated oral sexual battery based on allegations of molestation made by two of his stepdaughters, who were both under the age of twelve. The defendant was sentenced to two terms of life imprisonment without benefit of probation, parole, or suspension of sentence on the two convictions for aggravated rape, and fifteen years imprisonment on the conviction for aggravated sexual battery. All the sentences were ordered to be served concurrently. The defendant appeals his convictions. For the following reasons, we affirm the defendant's convictions; amend the defendant's sentences for aggravated rape with instructions, and affirm as amended; and vacate the defendant's sentence for aggravated oral sexual battery and remand with instructions.

## Factual and Procedural Background

The defendant, Booker Earl Loyden, was charged by bill of indictment on February 24, 2000, with two counts of aggravated rape, violations of La.R.S. 14:42,[1]

---

[1] Prior to its amendment in 2001, Louisiana Revised Statutes 14:42 stated the following:

> A. Aggravated rape is a rape committed upon a person sixty-five years of age or older or where the anal or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed under any one or more of the following circumstances:
>
> . . . .
>
> (2) When the victim is prevented from resisting the act by threats of great and immediate bodily harm, accompanied by apparent power of execution.
>
> . . . .
>
> (4) When the victim is under the age of twelve years. Lack of knowledge of the victim's age shall not be a defense.
>
> . . . .
>
> D. (1) Whoever commits the crime of aggravated rape shall be punished by life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence.
>
> (2) However, if the victim was under the age of twelve years, as provided by

and one count of aggravated oral sexual battery, a violation of La.R.S. 14:43.4.[2] The indictment alleged that the defendant had sexual intercourse with his stepdaughters, A.B., who was six years old at the time of the acts, and L.B., who was seven years old at the time of the acts, and also forced L.B. to take his penis into her mouth. The defendant pled not guilty and filed a motion to suppress the live testimony of the two girls, alleging that they were "well below the age of competency." The trial court held a competency hearing and, after hearing from the oldest child, determined that she was competent to testify. The defense then dismissed the motion with regard to the second child and the case continued to a jury trial on March 6, 2002.

---

Paragraph A(4) of this Section:

(a) And if the district attorney seeks a capital verdict, the offender shall be punished by death or life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence, in accordance with the determination of the jury. The provisions of C.Cr.P. Art. 782 relative to cases in which punishment may be capital shall apply.

(b) And if the district attorney does not seek a capital verdict, the offender shall be punished by life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. The provisions of C.Cr.P. Art. 782 relative to cases in which punishment is necessarily confinement at hard labor shall apply.

[2] Prior to the 2001 amendments, Louisiana Revised Statutes 14:43.4 stated the following:

A. Aggravated oral sexual battery is an oral sexual battery committed when the intentional touching of the genitals or anus of one person and the mouth or tongue of another is deemed to be without the lawful consent of the victim because it is committed under any one or more of the following circumstances:

. . . .

(2) When the victim is prevented from resisting the act by threats of great and immediate bodily harm, accompanied by apparent power of execution.

. . . .

(4) When the victim is under the age of twelve years. Lack of knowledge of the victim's age shall not be a defense.

. . . .

C. Whoever commits the crime of aggravated oral sexual battery shall be punished by imprisonment, with or without hard labor, without benefit of parole, probation, or suspension of sentence, for not more than twenty years.

At trial, the State presented the testimony of the defendant's ex-wife, Judy Butler Loyden, who is the mother of L.B. and A.B. Ms. Butler testified that she has three daughters, and that A.B., who was nine years old at the time of trial, was the oldest and that L.B., who was eight years old at the time of trial, was the middle child. She said that on January 22, 2000, she had taken L.B. to the laundromat with her. Ms. Butler testified that she brought L.B. back to the house and was about to return to the laundromat when L.B. told her that her stepfather was "messing" with her and A.B. She said that she went into the house and confronted the defendant, who denied L.B.'s accusations. In front of the defendant, Ms. Butler asked A.B. if what L.B. was saying was true, but she said that A.B. looked at the defendant and would not say anything. She said that she then took the girls into their bedroom, where A.B. told her that the defendant had made them engage in sexual intercourse with him and perform oral sex on him.

Ms. Butler testified that she immediately took the children to Rapides General Hospital, where the police and child protective services were called. The children were referred to the Children's Advocacy Center, where they were examined three days later. Ms. Butler stated that she took the children and moved in with relatives and had not lived with the defendant since.

The victims also testified for the State. A.B. testified first, stating that the defendant would take her alone, L.B. alone, or both of them together into his bedroom and tell them to remove their clothes. A.B. provided a detailed description of how the defendant would force the girls to perform oral sex on him, and would lay on top of them and have sexual intercourse with them. She said that the defendant told the girls he would "whip" them if they told anybody about the abuse. Although she could not

3

remember how many times the defendant had assaulted her, she said that she thought that the acts had occurred for several months. L.B.'s testimony was similar to her sister's, although she testified that the defendant would always bring both girls into his room when he would abuse them. L.B. also could not remember exactly how many times the defendant had abused her, although she said that it was more than ten times and that the abuse had started when she was five years old.

Finally, the State called Dr. Deborah Myers, the pediatrician who had examined the victims. Dr. Myers stated that she took a history from each child and then performed a physical exam. She provided the specific physical findings of the exams and stated that, for each child, her diagnosis was that the physical exam was compatible with the child's allegation of sexual abuse. However, Dr. Myers stated that she could not determine exactly who or what inflicted the girls' injuries. On cross-examination she stated that it was possible, but "highly unlikely[,]" that the injuries could have been inflicted accidentally by the girls themselves.

The defendant presented the testimony of Leo Johnson, who stated that, in the course of working and traveling with the defendant, he had occasion to see two large scars in the defendant's pelvic region. The defendant entered a photograph demonstrating the scars into evidence and argued that if the children had been in contact with the his pubic region, they would have seen the scars. When questioned about any marks they had seen on the defendant, A.B. had testified that the only marks she had seen on the defendant's body were on his knees, and L.B. had stated that the defendant had a scratch on his right arm and a "mark" or "scratch" on his hip.

The jury returned a unanimous verdict, finding the defendant guilty of two counts of aggravated rape and one count of aggravated oral sexual battery. The

defendant filed a Motion for New Trial, which was denied on May 10, 2002. On the same day, after waiving all applicable delays, the defendant was sentenced to serve two terms of life imprisonment without the benefit of probation, parole, or suspension of sentence on the two convictions for aggravated rape, and fifteen years imprisonment on the conviction for aggravated oral sexual battery. All the sentences were ordered to be served concurrently. The defendant now appeals, asserting the following assignments of error:

1. The Trial Court erred in failing to instruct the jury on the lesser included charge of guilty of simple rape, and guilty of attempted simple rape.

2. The Trial Court erred in applying the rape shield statute to disallow prior conduct by the juveniles which would explain their behavior and the medical evidence, undermining the defense theory of the case.

3. The Trial Court erred in allowing the admission of hearsay testimony.

4. The Trial Court erred in allowing Dr. Deborah Myers to testify as a human lie detector, therefore usurping defendant's right to a jury trial.

5. The Trial Court denied the accused the right to a public trial in violation of the Sixth Amendment and Fourteenth Amendment of the United States Constitution, by closing the courtroom without defendant's consent.

**Discussion**

*Errors Patent*

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we note that the trial court failed to state whether the sentences on the defendant's convictions were to be served at hard labor. Although the minutes of the sentencing hearing indicate that the trial court ordered each sentence be served at hard labor, the transcript of sentencing indicates that the trial court failed to specify whether the sentences

5

imposed were to be served at hard labor. The penalty provision for aggravated rape, La.R.S. 14:42, requires that the sentence be imposed at hard labor. However, the penalty provision of aggravated oral sexual battery, La.R.S. 14:43.4, permits imprisonment to be imposed either with or without hard labor.

We will begin by considering the aggravated rape sentence. This court recently considered a similar error patent, finding that the sentences imposed for aggravated battery and obstruction of justice, both of which were necessarily punishable at hard labor, were illegally lenient since the trial court failed to state that they were to be served at hard labor. *State v. Vollm*, 04-837 (La.App. 3 Cir. 11/10/04), 887 So.2d 664. Citing La.Code. Crim.P. art. 882 as our authority,[3] we amended the sentences to indicate that they were to be served at hard labor. *Id.*

Similarly, we find that the sentences imposed for the defendant's two aggravated rape convictions in this case are illegally lenient, because the trial court did not indicate that they were to be served at hard labor. Under the authority of La.Code Crim.P. art. 882, we amend the sentences imposed by the trial court to affirmatively indicate that the sentences for aggravated rape be served at hard labor. The district court is directed to make an entry in the minutes reflecting this amendment.

We next consider the sentence imposed aggravated oral sexual battery. The penalty provision for aggravated oral sexual battery provides for the sentence to be imposed either with or without hard labor. Because it did not specify whether or not the defendant's sentence was to be served at hard labor, the trial court imposed an

---

[3] Louisiana Code of Criminal Procedure Article 882(A) states in relevant part: "An illegal sentence may be corrected ... by an appellate court on review."

6

indeterminate sentence. La.Code Crim.P. art. 879.[4] Consequently, we vacate the sentence for the aggravated oral sexual battery conviction and remand this matter for the imposition of a determinate sentence. In doing so, we instruct the trial court to specify whether the sentence is to be served with or without hard labor.

*Lesser Included Offense*

As his first assignment of error, the defendant argues that the trial court erred when it did not "instruct the jury on the lesser included offense of simple rape and its definition, and the lesser included offense of attempted simple rape and its definition." The defendant asserts that, as a result of the failure to properly instruct them, the jury did not have the option of finding him guilty of a lesser offense.

Louisiana Code of Criminal Procedure Article 801 states that the trial court "shall charge the jury after the presentation of all evidence and arguments." Louisiana Code of Criminal Procedure Article 802(1) states that the trial court shall charge the jury "[a]s to the law applicable to the case."

Louisiana Code of Criminal Procedure Article 814(A) provides that the responsive verdicts for the charge of aggravated rape are as follows: Guilty, guilty of attempted aggravated rape, guilty of forcible rape, guilty of attempted forcible rape, guilty of sexual battery, guilty of simple rape, guilty of attempted simple rape, and not guilty. The verdict form provided to the jury in this case did not include simple rape or attempted simple rape. Nor did the trial court read the definition for simple rape or attempted simple rape during its instructions to the jury.

Louisiana Code of Criminal Procedure Article 814(C) provides:

_____

[4] Louisiana Code of Criminal Procedure Article 879 states: "If a defendant who has been convicted of an offense is sentenced to imprisonment, the court shall impose a determinate sentence."

7

Upon motion of the state or the defendant, or on its own motion, the court shall exclude a responsive verdict listed in Paragraph A if, after all the evidence has been submitted, the evidence, viewed in a light most favorable to the state, is not sufficient reasonably to permit a finding of guilty of the responsive offenses.

"If there is no evidence reasonably supporting a verdict, then such a verdict may be excluded as a possible responsive verdict." *State v. Taylor*, 34,096, p.12 (La.App. 2 Cir. 12/15/00), 774 So.2d 379, 387 (citing *State v. Harris*, 627 So.2d 788 (La.App. 2 Cir. 1993), *writ denied*, 93-3188 (La. 3/18/94), 634 So.2d 851), *writ denied*, 01-312 (La. 12/14/01), 803 So.2d 984. In *Taylor*, the second circuit held:

In *State v. Harris, supra*, the state filed a motion to exclude forcible rape, attempted forcible rape, simple rape, and attempted simple rape as possible responsive verdicts in the bench trial. The trial court granted the motion. The defendant was charged with aggravated rape on the basis that the victim was under the age of twelve. The evidence showed that the victim was indeed under the age of 12. There was no evidence that force, violence, or threats were used upon the victim. Thus, there was no support for a verdict of forcible rape. There was also no evidence to show the victim was mentally impaired, of unsound mind, intoxicated, or under the belief that the defendant was her husband. Thus, there was no support for a verdict of simple rape. This court found no error in the trial court's exclusion of the responsive verdicts pursuant to the requirements of La. C.Cr.P. art. 814(C).

Here, too, we find no error in the trial court's exclusion of the responsive verdicts of simple rape and attempted simple rape. The defendant's argument is predicated on speculation that a jury might infer that one who goes to a nightclub to dance will drink alcohol to the extent that he or she may become intoxicated. ... A review of the record reveals no evidence or even suggestion that McKenna was under the influence of an intoxicating agent, anesthetic agent, or narcotic. Absent such evidence, it would not be reasonable for a jury to infer that McKenna was intoxicated from the mere fact that she went dancing at some time prior to her attack. Finding no evidence upon which a jury could have possibly returned a verdict of simple rape or attempted simple rape, we conclude the trial judge was not required to charge the jury as to the law applicable to either verdict.

During the reading of the instructions to the jury in the instant matter, the trial court inadvertently began to read the definition of simple rape, stating:

> If you're not convinced the defendant is guilty of sexual battery, but are convinced beyond a reasonable doubt the defendant is guilty of attempted - huh, simple rape should not be in here because we don't have the verdict for simple rape. Omit that other sentence. We have a list that they provide for us. The charges are on that and in my cutting and pasting I put in simple rape and simple rape is not responsive in this case.

The trial court excluded the responsive verdicts on its own initiative as permitted by La.Code Crim.P. art. 814(C). The charge of aggravated rape was premised on the fact that the victims were six and seven years old at the time of the offenses. Our review of the record indicates that there was nothing from which the jury could have inferred that the children were either physically or mentally incapacitated at the time of the offenses. As in *Taylor* and *Harris*, in the present case there was no error with the trial court's exclusion of the responsive verdicts of simple rape and attempted simple rape.

Moreover, La.Code Crim.P. art. 801 precludes a party from assigning as error a failure to give a specific jury instruction unless the party objects to the error "before the jury retires or within such time as the court may reasonably cure the alleged error." The defendant did not object to the exclusion of the responsive verdicts of simple rape and attempted simple rape before instructions were read to the jury, nor following the jury instructions, not even when the trial court noted particularly that it was excluding the responsive verdicts for lack of evidence.

For all the above reasons, this assignment of error lacks merit.

*Rape Shield Statute*

For his second assignment of error, the defendant asserts that the trial court erred when it applied the rape shield statute. The defendant argues that he was effectively prohibited from presenting a defense.

9

The Sixth Amendment to the United States Constitution and Article I, § 16 of the Louisiana Constitution guarantee an accused in a criminal prosecution the right to be confronted with the witnesses against him. The primary purpose behind this right is to secure for the defendant the opportunity for cross-examination. *Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested. *State v. Hillard*, 398 So.2d 1057, 1059 (La.1981).

An accused also has a constitutional right to present a defense. *Washington v. Texas*, 388 U.S. 14, 19, 87 S.Ct. 1920, 1923, 18 L.Ed.2d 1019 (1967). As a general rule, a party may attack the credibility of a witness by examining him or her concerning any matter having a reasonable tendency to disprove the truthfulness of his or her testimony. LSA-C.E. art. 607(C). The right of an accused sex offender to present a defense is, however, balanced against the victim's interests under LSA-C.E. art. 412, which is meant to protect the victim of sexual assault from having her sexual history made public.

*State v. Zeringue*, 03-697, pp. 13-14 (La.App. 5 Cir. 11/25/03), 862 So.2d 186, 195, *writ denied*, 03-3523 (La. 4/23/04), 870 So.2d 298.

Louisiana Code of Evidence Article 412 addresses a victim's past sexual behavior in sexual assault cases and provides, in pertinent part, as follows:

**A. Opinion and reputation evidence.** When an accused is charged with a crime involving sexually assaultive behavior, reputation or opinion evidence of the past sexual behavior of the victim is not admissible.

**B. Other evidence; exceptions.** When an accused is charged with a crime involving sexually assaultive behavior, evidence of specific instances of the victim's past sexual behavior is also not admissible except for:

(1) Evidence of past sexual behavior with persons other than the accused, upon the issue of whether or not the accused was the source of semen or injury; provided that such evidence is limited to a period not to exceed seventy-two hours prior to the time of the offense, and further provided that the jury be instructed at the time and in its final charge regarding the limited purpose for which the evidence is admitted; or

(2) Evidence of past sexual behavior with the accused offered by the accused upon the issue of whether or not the victim consented to the sexually assaultive behavior.

It appears from the record that the issue of whether the defendant would be able to question the victims' past sexual behavior was addressed on the morning of the trial, and that the trial court denied the defendant's request. Later during the testimony of the victims' mother, the defendant asked her whether the victims ever complained about "anything sexual." The State objected and the trial court sustained the objection. The defendant then asked the victims' mother if she had ever explained the "birds and the bees" to them, to which the State again objected and the trial court sustained the objection.

The defendant argues that, "[s]pecifically, it was the intent of the defense to bring forth testimony that there was prior conduct by the two juveniles which would explain their behavior and explain the cause of the medical evidence which was presented to the fact finder." He further argues that "[t]he purpose of the rape shield statute is to protect victims of crime; however, it is not to undermine the defense theory of the case, nor is it to prohibit the probing of how a child victim injured themselves, or how someone else may have sexually assaulted them." The defendant points to *State v. Blue*, 591 So.2d 1173 (La.App. 1 Cir. 1991), *writ granted in part on other grounds*, 591 So.2d 1172 (La.1992), upon which the defendant states the trial court incorrectly based its ruling in the present case. The defendant argues that *Blue* is distinguishable from the present case in that in *Blue* the victim was not injured, and no semen or other such physical evidence was recovered.

In *Blue* the defense asked the victim's mother whether the victim had ever complained about being sexually molested by another person. The trial court, referring to La.Code Evid. Art. 412, sustained the State's objection. The first circuit stated:

11

In his brief to this court, the defendant argues that evidence of the alleged molestation of the victim by Mr. Martinez "was offered to show that someone other than the defendant had molested her in the past, therefore, she was able to describe the act of molestation." The defendant specifically notes that such evidence was not offered to impeach the victim's general reputation for chastity. Nevertheless, the trial court correctly ruled that any other such molestation of the victim was irrelevant and inadmissible. *See State v. Feet*, 481 So.2d 667, 673-674 (La.App. 1st Cir.1985), *writ denied*, 484 So.2d 668 (La.1986); *State v. Miller*, 449 So.2d 1361, 1363-1364 (La.App. 1st Cir.), *writ denied*, 450 So.2d 965 (La.1984). In this case, the victim was not physically injured, and no semen or other such physical evidence was recovered. See LSA-C.E. art. 412 B(1). See also *State v. Langendorfer*, 389 So.2d 1271, 1274, 1275 (La.1980). Furthermore, consent was not an issue in this case. See LSA-C.E. art. 412 B(2). See *State v. Vaughn*, 448 So.2d 1260, 1267-1268 (La.1983).

*Id*. at 1177.

Similarly, in the present case, there was no injury or semen at issue, nor was consent an issue. The questions the defendant asked the victims' mother were designed to solicit whether the victims had been sexually molested by another person and where they may have received the information necessary to describe the sexual acts. Considering Louisiana's rape shield statute, we find that the trial court did not err when it sustained the State's objections to these questions.

The defendant further argues that *Blue* is distinguishable because consent was not an issue, and that the defense in *Blue* failed to comply with the pre-trial, written motion requirements of La.Code Evid. art. 412(C).

Louisiana Code of Evidence Article 412(C) provides:

(1) Before the person accused of committing a crime that involves sexually assaultive behavior may offer under Paragraph B of this Article evidence of specific instances of the victim's past sexual behavior, the accused shall make a written motion in camera to offer such evidence. The motion shall be accompanied by a written statement of evidence setting forth the names and addresses of persons to be called as witnesses.

(2) The motion and statement of evidence shall be served on the state which shall make a reasonable effort to notify the victim prior to the hearing.

Further, La.Code Evid. art. 412(D) provides:

The motion shall be made within the time for filing pre-trial motions specified in Code of Criminal Procedure Article 521, except that the court shall allow the motion to be made at a later date, if the court determines that:

(1) The evidence is of past sexual behavior with the accused, and the accused establishes that the motion was not timely made because of an impossibility arising through no fault of his own; or

(2) The evidence is of past sexual behavior with someone other than the accused, and the accused establishes that the evidence or the issue to which it relates is newly discovered and could not have been obtained earlier through the exercise of due diligence.

Louisiana Code of Criminal Procedure Article 521 provides that all pre-trial motions are to be submitted within fifteen days following arraignment, unless authorized by the trial court otherwise.

Our review of the record indicates that the defendant in the present case failed to comply with the pre-trial, written motion requirements of La.Code Evid. art. 412(C). While the defendant did file a pre-trial Motion to Suppress the testimony of A.B. and L.B., the motion only challenged the competency of the victims due to their age and did not meet the requirements of La.Code Evid. art. 412(C). *See also Zeringue,* 862 So.2d 186 and *State v. Hotoph*, 99-243 (La.App. 5 Cir. 11/10/99), 750 So.2d 1036, *writs denied*, 99-3477 (La. 6/30/00), 765 So.2d 1062; 00-0150 (La. 6/30/00), 765 So.2d 1066, wherein the fifth circuit found that Hotoph waived the right to introduce any evidence of the victim's past sexual history when he failed to make the proper motion under Article 412.

For all of the above reasons, this assignment of error lacks merit.

*Hearsay*

The defendant asserts for his third assignment of error that the trial court allowed hearsay testimony over his objections. He argues that while testimony regarding initial reports or complaints concerning sexually assaultive behavior is an exception to the hearsay rule, the trial court allowed substantially more than just the initial complaint to be admitted into evidence in violation of his right to due process of law.

Hearsay is defined as "a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted." La.Code Evid. art. 801(C). Louisiana Code of Evidence Article 801(D) contains a list of statements which are not classified as hearsay, including the following, in relevant part:

> **(1) Prior statement by witness**. The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is:
>
> . . . .
>
> (d) Consistent with the declarant's testimony and is one of initial complaint of sexually assaultive behavior.

In *State v. Marcantel,* 98-825, p. 15 (La.App. 3 Cir. 12/22/99), 756 So.2d 366, 374, *writ denied*, 00-208 (La. 6/30/00), 766 So.2d 1274, this court held:

> [T]he "initial complaint" or "first complaint" stands as a well-rooted exception to the general rules of evidence. Even before its codification under Article 801, it was recognized as a subspecies of what was formerly known as *res gestae. See State v. Comeaux*, 319 So.2d 897 (La.1975). Applying *Idaho v. Wright*, 497 U.S. 805, 110 S.Ct. 3139, 111 L.Ed.2d 638, to one of Louisiana's public records exceptions, the Louisiana Supreme Court found that exception to be sufficiently "firmly rooted" to satisfy the constitutional concerns discussed in *Idaho v. Wright. State v. Powdrill*, 95-2307 (La.11/25/96); 684 So.2d 350 *concurrence*, 95-2307 (La.12/30/96); 694 So.2d 892.

At trial in this matter, the mother of the victims testified that on January 22, 2000, L.B. told her that her stepfather was "messing" with her and A.B. She stated that she went into the house and confronted the defendant, who denied L.B.'s accusations. In front of the defendant, she asked A.B. about L.B.'s accusations, but she testified that A.B. would not say anything until she took the two girls into their bedroom, when they told her about the sexual assaults. She stated that she then put all three girls into the car and drove to the hospital. Ms. Butler testified first as to what L.B. said, and then she testified as to what A.B. said.

Our review of the record reveals that the mother's testimony clearly established that the day of January 22, 2000, was the first complaint that she received from the victims regarding sexual assault by the defendant. Furthermore, both victims also testified and the defendant cross-examined each of them. Their testimony was consistent with their mother's testimony as well as with each other's testimony. Therefore, the statements were not hearsay because they were admitted pursuant to La.Code Evid. art. 801(D)(1)(d). This assignment is without merit.

*Right to Jury Trial*

For his fourth assignment, the defendant asserts that he was denied the right to a jury trial when the State's expert witness, who testified as an expert in the field of pediatrics and child sexual abuse, told the jury that she believed the victims were telling the truth, thereby usurping the jury's function as the factfinder.

Doctor Deborah Myer testified at trial for the State. She testified as an expert in the area of pediatric medicine and in the area of child sexual abuse. She testified that she examined the victims three days after the sexual abuse was reported.

In support of his argument in his appellate brief, the defendant pointed to the following testimony offered by Dr. Myer:

Q. Okay. And what did [L.B.] tell you?

A. Okay. She basically told me that last Saturday, when they had gone to the laundromat, when the youngest said that her daddy had been putting his thing into her for a while. And they agreed that he has the same activity for both of them. I was talking to them together and they were saying, well, yeah, you know he does the same thing both - with both of us. But there's also, apparently, a younger child involved and they just were very very adamant that, no, he wasn't doing anything with the youngest child. And I'm not sure what the age on the youngest was. I don't believe that they ever told me.

Q. Based on the history that she gave you, did you expect to find any physical evidence?

A. I believed her.

Q. Okay. But even before you looked, did you expect . . .

A. Even before I looked, I believed her because she was so very graphic.

. . . .

A. Okay. Yeah. The notches happen when the hymen is penetrated. And I can tell you that this hymen was penetrated; I cannot tell you by what it was penetrated. It can be anything. But, ordinarily, when a girl tells you very plainly that someone has put their thing in their vagina, that's what's happened.

. . . .

Q. Okay. Did [A.B.] disclose any history to you?

A. Right. Basically, the two of them together, and so I sort of combined their histories together in that the two sisters were brought in to OCS after telling their mother about daddy putting his thing into their private parts.

. . . .

Q. And, in your opinion, these histories are consistent with children who have been sexually abused?

16

A. In - in reading and attending courses, we're always told and- and taught through books that children this age don't make this kind of stuff up.

. . . .

Q. Dr. Myers, if-if these young girls had lied to you, is there any way to substantiate what they're telling you?

A. I'm a pretty good judge of children. I'm a pretty good judge of who's lying and who's not. But, in addition to the general feeling that these girls were - were open and free and discussed this with me and I didn't feel like they were lying to me, they had physical findings that were compatible with their story. So, yes, I thought they were telling the truth.

Our review of Dr. Myer's testimony indicates that, except for an objection to her qualifications as an expert in the field of child sexual abuse, the defendant did not raise any objections during Dr. Myer's testimony. More specifically, the defendant did not object to any of the statements which he alleges on appeal. Absent a contemporaneous objection at trial, the issue should not be considered for the first time on appeal. La.Code Crim.P. art. 841.[5] *See also Mercantel*, 756 So.2d at 375, where a panel of this court found that because Mercantel failed to object to the challenged expert testimony, this court held that he waived the right to raise the issue on appeal.

Because the defendant failed to raise an objection to the expert's testimony at trial, this assignment lacks merit.

*Public Trial*

For this final assignment of error, the defendant alleges that the trial court erred when it cleared the court of anyone except reporters, social workers and anyone else

---

[5] Louisiana Code of Criminal Procedure article 841 states, in relevant part that "[a]n irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence."

17

who may have been "exempt[ed]" while the two minor victims were testifying. The defendant asserts that he was denied his constitutional right to a public trial.

In a criminal case, the accused is afforded the right to enjoy a public trial by both the United States Constitution and the Louisiana Constitution. U.S. Const. amend. VI; La.Const. art. I, § 16. "However, this right to a public trial is not absolute, and it may give way to other rights or interests[.]" *State v. Sarrio*, 01-543, p. 10 (La.App. 5 Cir. 11/27/01), 803 So.2d 212, 219, *writ denied*, 02-0358 (La. 2/7/03), 836 So.2d 86.

In *State v. Raymond*, 447 So.2d 51, 53 (La.App. 1 Cir.), *writ denied*, 449 So.2d 1347 (La.1984), the trial court cleared the courtroom of two non-witness adult children of the wife of the defendant who was testifying about her husband's sexual abuse of children. The first circuit held:

> In criminal cases, the accused is granted the right to enjoy a public trial. U.S. Const.Amend. 6 and 14; La. Const. Art. 1, sec. 16 (1974). The right to a public trial is not a "limitless imperative"; the right is subject to the trial judge's power to keep order in the courtroom, or to prevent unnecessary pressures or embarrassment to a witness. *United States ex rel. Smallwood v. La Valle*, 377 F.Supp. 1148 (E.D.N.Y.1974); aff'd 508 F.2d 837 (1974); cert. denied 421 U.S. 920, 95 S.Ct. 1586, 43 L.Ed.2d 788 (1975). A trial judge may, in his sound discretion, exclude spectators from the courtroom while the testimony of a witness in a criminal case is being taken, if such a step is reasonably necessary to prevent embarrassment or emotional disturbance of that witness or to enable that witness to testify to facts material to the case. *State v. Poindexter,* 231 La. 630, 92 So.2d 390 (1956).

*Id.* at 53.

Louisiana Revised Statutes 15:469.1, in pertinent part, provides that "[i]n cases of . . . aggravated rape . . . in which the victim is a child of fifteen years of age or younger, the trial court . . . may order that the testimony of such victim be heard either in closed session of court or in the judge's chambers[.]"

In the present case, prior to the testimony of the minor victims who were seven and eight years old at the time of trial, the trial court cleared the courtroom of anyone other than reporters, social workers, and anyone else who may have been "exempt[ed.]" We find that the trial court did not violate the defendant's constitutional right to a public trial since he did not exclude the media and other essential parties. Our review of the record indicates that the trial court sought to create an atmosphere where the two minor children could testify about their experiences with a minimum amount of embarrassment, in order to facilitate more accurate testimony.

We also note that, according to the record, at the time of the partial-closure of the courtroom, the defendant did not object to the courtroom being cleared of nonessential people, thereby waiving the right to raise the issue on appeal. La.Code Crim.P. art. 841.

Therefore, this assignment has no merit.

### DECREE

For the foregoing reasons, Booker Earl Loyden's convictions are affirmed. However, his two life imprisonment sentences for his aggravated rape convictions are amended to indicate that they are to be served at hard labor. The district court is directed to enter this amendment in the minutes. Also, the defendant's sentence for his aggravated oral sexual battery conviction is vacated and remanded for the imposition of a determinate sentence with instructions to specify wither the sentence is to be served with or without hard labor.

**CONVICTIONS AFFIRMED; SENTENCES FOR AGGRAVATED RAPE AMENDED WITH INSTRUCTIONS, AND AFFIRMED AS AMENDED; SENTENCE FOR AGGRAVATED ORAL SEXUAL BATTERY VACATED AND REMANDED WITH INSTRUCTIONS.**